JACKSONVILLE, TAMPA & KEY WEST RAILWAY COMPANY, APPELLANT, vs. FREDERICK A. GARRISON, APPELLEE.

1. The act of 1887, Chapter 3740, Laws of Florida, making the killing of live stock by a railroad company *prima facie* evidence of negligence, operates upon the remedy and does not change the basis of liability in such cases.

2. Prior to the passage of the act requiring railroad companies to fence their tracks (Chapter 3742), negligence is the basis of liability in an action against the company for killing live stock on the track, and it must be alleged in the declaration; but an allegation that the engine and cars of the defendant company were so negligently and carelessly operated by the agents and servants of the company that the engine struck an animal described in the declaration, by means whereof it died, is sufficient.

3. Testimony showing that plaintiff's cow was killed, and found with her back broken, on the side of a railroad track at a point where there was a ditch filled with water on either side, and a measurement of the cow's tracks indicated that she had run ahead of the train, and also there were indications where she

had been struck by the train :  *Held*, sufficient  to  sustain the finding of  a referee that the train killed the cow.

4. Where  the finding of  a referee as to  the value of  a  Jersey cow killed does  not exceed her market  value, as shown by positive testimony, it will not  be set aside  on the ground that it is  excessive.

5. A railroad company that holds itself out to the public  as the operator of  a  railroad is  liable  for  damages  resulting to  third persons by reason of  a  negligent management and  operation of  said  road.

Appeal from the  Circuit Court for  Putnam  county.

The facts  of the case are stated  in the opinion.

*J. R. Parrott* for Appellant.

*Geo. P. Fowler* for Appellee.

MABRY, J. :

Appellee, as plaintiff  in the  Circuit Court,  commenced suit in  the Fifth  Judicial Circuit for Putnam county against the appellant company for  the  alleged negligent killing  of  a Jersey cow.   The material allegations  of  the declaration, omitting  the  formal parts, are that the defendant on  the 26th day of June, A. D. 1886, was possessed of,  using and operating  a railroad called and designated  as the Jacksonville, Tampa and Key  West Railway, through  a portion of  the  county of Putnam, and  so  using and  operating said  railway with locomotive engines and cars,  said defendant then and there drove a  certain locomotive  engine and train

over and along said railway in the county aforesaid, the said locomotive engine and train of cars then and there being run, governed and operated by divers agents of defendant so negligently and carelessly, at a place about two miles south of Palatka, in said county, and near the house of one Sike Saunders, and where there was a deep ditch on each side of said railway track, that said locomotive engine then and there violently ran and struck upon and against a certain Jersey cow, the property of plaintiff, by means whereof said Jersey cow was so badly hurt and injured that she died. It is further alleged that said cow was in good condition and was of great value, and the damages claimed amount to three hundred and fifty dollars.

A demurrer to this declaration, assigning as grounds that it states no cause of action, and is too vague and indefinite to be answered, was overruled in the trial court, and this decision is assigned as error here. The contention is, that negligence is the basis of plaintiff's right to recover, and this being so, the declaration should set forth fully in what respect defendant was negligent, in order that defendant may not be taken by surprise at the trial. The cases of Chicago, etc., R. R. Co. vs. Harwood, 90 Ill., 425, and Savannah, Florida & Western Ry. Co. vs. Geiger, 21 Fla., 669, are cited. In the Geiger case there was no allegation whatever of negligence on the part of the defendant in killing the stock sued for by the plaintiff. Here there is an allegation that the engine and cars were so negligently and carelessly operated by the agents and servants of defendant that the engine struck the cow

mentioned, by means whereof she died. The suit in the Illinois case referred to was against a railroad company for the killing of the husband of plaintiff at a highway crossing, through the alleged negligence of the servants of the company in charge of its train. The declaration in one count alleged that the defendant "so carelessly and improperly drove and managed the said engine and train of cars that it struck and so injured" the person whose death is alleged, that he soon afterwards died. The objection to this declaration was not taken by demurrer, and the court held that it was too late to urge the objection after trial on the general issue. The opinion of the court, however, does hold that to recover damages for the killing of plaintiff's intestate, the declaration should show in what such negligence consists, and not charge the same in general terms, without disclosing any specific acts or omissions. The cow referred to in the case before us was alleged to have been killed in June, 1886, and the trial occurred in 1888, after the passage of the act of 1887, making the killing of stock by a railway company *prima facie* evidence of negligence. This act operates upon the remedy and does not change the basis of liability in such cases. The provision in reference to fencing railroad tracks was not in force at the time of the killing of the cow in question, and has no application to this case. Negligence is the basis of the action as applied to this case, and must be alleged in the declaration. Savannah, Florida and Western Ry. Co. vs. Geiger, *supra*. Our conclusion is, that the declaration before us does

allege negligence and is sufficient in such character of cases. This conclusion will not of course conflict with the rule of pleading that where as a ground of action specific acts of negligence are alleged, a recovery can not be had upon other and different grounds. In injuries to the person there are decisions to the effect that the declaration should show in what the alleged negligence consisted, and not charge it in general terms. This was the ruling in the case of Waldhier vs. Hannibal & St. J. R. R. Co., 71 Mo., 514. The same court held in Schneider vs. Missouri Pacific Ry. Co., 75 Mo., 295, that the allegations in the complaint that the defendant so carelessly and negligently ran and managed its locomotive engine and cars on its railroad as to run against and over plaintiff's horse, thereby killing him, was sufficient. It is said by the court that the two cases are distinguishable. In support of our conclusion *vide* Clark vs. Chicago, M. & St. P. Ry. Co., 28 Minn., 69; Keating vs. Brown, 30 Minn., 9; Grinde vs. M. & St. P. R. Co., 42 Iowa, 376; St. Louis and S. E. Ry. Co. vs. Mathias, 50 Ind., 65; Clark vs. Chicago, B. & Q. Ry. Co., 15 Fed. Rep., 588.

After the overruling of the demurrer, the defendant company interposed the plea of the general issue, and that it did not, at the time alleged in the declaration, own, use or operate any railroad through the said county of Putnam, south of the city of Palatka. Upon issue joined, the case was referred to a referee

who heard the cause and rendered a judgment against the defendant company for $300 and costs of suit. The case is before us on the company's appeal, and the contention of its counsel embraces three alleged causes for a reversal of the judgment. The first is, it is not properly shown that plaintiff's cow was killed by a railroad company; secondly, that her value has not been established sufficiently to authorize the finding of the referee; and, thirdly, the proof shows that the defendant company did not operate the train that killed the cow, if she was killed by any railroad company.

. The plaintiff testified, among other things, as follows: "During the month of June, 1886, I had a cow killed on the Jacksonville, Tampa and Key West Railway. It was injured. It had its back broken. I went and looked at the cow and saw she was mine." He stated that the cow was killed on the 26th day of June, 1886, about one mile and three-quarters from Palatka; that it was reported that she could not be found, and he went to hunt for her and found her on the east side of the track, going south. He says he went to see how she was injured, and found her so broken down that he did not try to save her, and also that he saw signs of a spike maul on her head where she was thumped to death. In describing the injuries to the cow, he further says "they were evidently done by the train, because the cow was on the track, and I saw where something heavy had struck her. I measured her tracks and saw where she had run ahead of the train and where it had struck her, and after that

I saw she was struck by something blunt." He was asked to describe any additional injuries to the cow, and stated that "when I got to the cow, intending to shoot her, I examined her and saw a print on her head where she had been hammered, and it looked like a spike maul." In describing the situation of the track where the cow was fonnd, the witness said: "On either side of it there was a ditch or gully that was filled with water, making it almost impossible after a cow got on the track for her to get off. The track there is very nearly a tangent, with a long stretch of straight track and level grade." The foregoing is the testimony in the record, as to the killing of the cow, upon which the referee acted in his finding against the company. This testimony will justify a finding, we think, that the cow was killed by the railroad company in the operation of its trains, and the referee having arrived at that conclusion, we are not authorized to disturb the judgment on this account. It can not be said that the finding in this respect is so contrary to the evidence as that it can not be sustained.

The second objection, that the finding of the referee is excessive, can not be sustained. The plaintiff testified positively that his cow was worth three hundred and fifty dollars in any market. He says she was a Jersey, and in fine condition, and that he had seen cows sell in that market for five hundred dollars that he would not have traded his cow for, and that he could not have duplicated her for five hundred dollars. If we discard entirely the indirect way in which the

witness states the value of the cow, we still have his positive statement that she was worth $350 in that market. William Thompson testified that in June, 1886, and prior thereto, he was about plaintiff's place every day, and often saw his cow; that he had had large experience with fine cattle, and saw all of plaintiff's cows when they were bought, and there were six Jerseys and one or two others. The witness did not see the cow in question after she was killed, but from the description stated that she was worth from $200 to $400. This showing as to value was not controverted by any testimony on the part of the defendant below. It is true that an exception was taken as to the statement of value by the witness, Thompson, but if his testimony be eliminated entirely, we still have the uncontradicted statement of the plaintiff that his cow was worth three hundred and fifty dollars. The judgment is for $300, a sum less than the value of the cow, as testified to by the plaintiff. As was said in the case of Jacksonville, Tampa and Key West Ry. Co. vs. Garrison, decided at the present term, there is no rule of law that will authorize an appellate court to set aside a judgment under such a state of facts on the ground that it is excessive.

The third objection, that the appellant company was not operating the road south of Palatka when the cow was killed, is also, in our judgment, without support. The record discloses the fact that A. B. Mason, the then Vice-President of the defendant company, and

R. H. Mason, a director and former general manager of the Palatka & Indian River Railway Company, testified that the defendant did not own, use or operate any railroad south of Palatka in June, 1886, but that the said Palatka & Indian River Railway Company built, owned and operated said road at said time. These witnesses say that the two roads were operated in harmony with each other, but were distinct, and their accounts were kept separate. A. B. Mason says that about that time an arrangement was made by which freights on the Palatka & Indian River road could be carried into Jacksonville by the defendant company, and a through rate was made in order to reduce freights. J. R. Parrott testified that he was at the time attorney for both roads, and "always held in filing papers in court the two corporations to be distinct." But these witnesses were unable to state that the Palatka & Indian River Railway Company had any resident business agent at Palatka, or at any station south of that point at the time of the killing of the cow. A. B. Mason stated on cross-examination that he presumed business was done on the road south of Palatka in the name of the Jacksonville, Tampa & Key West Railway Company, because they could not afford to print new blanks. R. H. Mason says he did not know that the Palatka & Indian River Railway Company owned any engines that ran over said road in June, 1886. Considerable testimony was introduced on behalf of the plaintiff below in rebuttal.

We will not undertake to set it out here. It shows, we think, that at the time of the killing of the cow. freights were shipped over the road south of Palatka and receipted for and delivered by agents acting for and in the name of the defendant company, and passenger tickets and annual passes authorizing the holders to travel in the cars operated over said road were also issued by said company in its name; that the cars hauled over said road had "J. T. & K. W. Ry," on them, and no rolling stock with the name of the Palatka & Indian River Railway Company on it was ever seen on the road. A party who had been employed by and acted as agent for the defendant company at the time, at a point south of Palatka, testified that all the letter heads, bill heads and forms used in transacting the business on said road, had on them the name of the defendant company, and that he acted as the agent of said company in receipting for and shipping all freights from his station; that he did no business in the name of the Palatka & Indian River Railway Company. We are satisfied from the evidence before us that as to the public the defendant company held itself out as the operator of the road, and as such is liable to third persons for negligence in the operation of the same, whatever may have been the true relation between it and the Palatka & Indian River Railway Company at the time. Jacksonville, Tampa & Key West Railway Company vs. Peninsular Land, Transportation and Manufacturing Company, 27 Fla., 1, 9 South. Rep., 661.

What has been said disposes of the material points of contention on appeal. Various exceptions were taken before the referee as to the admission and rejection of testimony, but it affirmatively appears, we think, that there is no such material error in any of them as to cause a reversal of the judgment.

The judgment will therefore be affirmed, and it is so ordered.