LOUISVILLE AND NASHVILLE RAILROAD COMPANY, PLAINTIFF IN ERROR, VS. EDWARD JONES, AS ADMINISTRATOR OF JOSEPH JONES, DECEASED, DEFENDANT IN ERROR.

DEATH BY WRONGFUL ACT—NEGLIGENCE. HOW ALLEGED—DEFENDANTS FOR SUPPORT—STATUTORY PLAINTIFFS.

1. The rule established in negligence cases is that it is not necessary for the declaration to set out the facts constituting the negligence, but an allegation of sufficient acts causing the injury, coupled with an averment that they were negligently and carelessly done will be sufficient; and where the negligence is alleged in general terms, and not confined to any specific acts of negligence, any acts of negligence contrary to the injury may be shown in proof.

2. At common law no one had any right to recover for the negligent or wrongful death of another. The right of recovery in such cases is due entirely to the statute giving such right, and it exists only in such persons as the statute gives it to.

3. Section 2 of Chapter 3439, laws of 1883, brought forward as section 2343 Revised Statutes, gives the right to recover for deaths by wrongful or negligent act (1) to the widow or husband of the deceased as the case may be; if there is neither widow or husband, then (2) to the minor child or children of the deceased; and where there is neither widow nor husband nor minor child, then (3) to any person or persons dependent on the person killed for a support; and, where there is neither of the above classes, then (4) to the executor or administrator of the person killed. The existence of the right of action in any of these named classes of persons, commencing with the

The L. & N. R. R. Co. v. Jones.—Statement of Case.

second class above, is wholly dependent upon the fact whether there is any person in esse belonging to any of the classes who are given by the statute the precedent right over him to maintain the action.

4. In suits for recovery for death by wrongful or negligent act the defendant may show in bar of the plaintiff's right to recover that there is in esse a person who is given by the statute the precedent right of action over the plaintiff.

5. In actions for damages for death by wrongful or negligent act when the question is in issue as to whether a person is a "dependent upon the deceased for support," and as such entitled to sue, such status can be shown by proofs establishing the following facts: that such person, regardless of any ties of relationship to the deceased, or of strict legal right to such support, was, either from the disability of age or non-age, physical or mental incapacity, coupled with the lack of property means, dependent in fact upon the deceased for a support, and that he or she from the fact of continued past support by the deceased, and not necessarily from any strict legal right thereto, had a reasonable expectancy of a continuation of such support from the deceased had he lived. Such reasonable expectancy, coupled with the other named facts establishing dependency, entitles such party to recover as a dependent for support.

This case was decided by Division A.

Writ of Error to the Circuit Court for Escambia County.

*W. A. Blount,* for Plaintiff in Error;

*S. R. Mallory. Jno. B. Jones* and *A. A. Fisher,* for Defendant in error.

## STATEMENT.

The defendant in error, as plaintiff below, sued the plaintiff in error, as defendant below. in the Circuit Court of Escambia County, the trial resulting in a verdict for $1,000 in favor of the plaintiff, upon which judgment was entered. and from this judgment writ of error is taken to this court.

The declaration was in substance as follows: "The plaintiff sues the defendant: Because that on the fourth day of July, A. D. 1897, the said defendant was possessed of, using and operating a certain railroad, a portion of which extended from Cantonment to Muscogee in Escambia county, State of Florida; that on said day plaintiff's intestate, the said Joseph Jones, deceased, a minor, the son of plaintiff, was in the employ of said defendant as a brakeman on a freight train, which on said day the defendant was possessed of, used and operated as a carrier of freight from Cantonment to Muscogee, aforesaid, and, in the line of his duty and employment as such brakeman, was engaged in performing such work in connection with the runing and operation of said train as is usually required of brakemen of freight trains upon said railroad. and while he was employed and engaged as aforesaid the said defendant through and by its servants so carelessly and negligently conducted itself in using, operating and managing said train, to-wit: in running said train at a fast and dangerous rate of speed around a sharp curve and through a deep cut on the line of said railroad from Cantonment to Muscogee that the said train ran into a collided with a handcar on said railroad track at said cut. and was thereby thrown from the track and wrecked,

thereby injuring the said Joseph Jones, who, thereafter, on the fifth day of July, 1897, died of the injury so caused."

"2nd Count:  And the plaintiff sues the defendant further, for that on the fourth day of July, A. D. 1897, the said defendant as a common carrier of freight was possessed of, used and operated a certain railroad, a portion of which extended from Cantonment to Muscogee in scambia county, State of Florida; that on said day plaintiff's intestate Joseph Jones, a minor, the son of the plaintiff, was in the employment of said defendant as a brakeman on a freight train of defendant which on said day was run and operated by the defendant on that portion of said railroad extending from Cantonment to Muscogee, and in the line of his duty and employment of such brakeman was engaged in performing such work in connection with the running of said train as is usually required of brakeman of freight trains upon said railroad, and while he was engaged in the line of his duty aforesaid the said defendant through the gross negligence and wilfulness of its servants so conducted themselves in and about the making up and operation of said train, that the said train, consisting of flat and box cars was coupled to and placed in front of the locomotive engine, the box cars being between the flat cars and engine in such a manner as to render the running of said train more than usually hazardous, and said train of cars while so made up, through the gross negligence and wilfulness of the defendant and its servants was so negligently run and operated by the defendant and its servants at a fast and dangerous rate of speed through a deep cut and around a sharp curve on the line of said railroad from Cantonment to Muscogee aforesaid that the said train ran into and collided with a

hand-car on said railroad track at said cut and was thereby thrown from the track and wrecked, thereby injuring the said Joseph Jones, who thereafter, on the fifth day of July, 1897, died of the injury so caused. Because of the aforesaid acts of the defendant plaintiff was damaged to the extent of the pecuniary value of the life of the deceased, the said Joseph Jones, and for pecuniary loss and expenses incurred by his death occasioned as aforesaid, in the sum of fifteen thousand dollars damages, wherefore he brings this suit. And the plaintiff avers that the said Joseph Jones was an unmarried man at the time of his death, and did not leave any wife or children, or any person or persons dependent upon him for a support."

To this declaration the defendant interposed two pleas as follows: 1st. Not guilty as alleged. 2nd. That it is not true that said Joseph Jones did not have any person dependant upon him for support, but that, in fact, he left his minor sister, Fannie Jones, so dependent."

On these pleadings the case was tried, resulting, as aforesaid, in a verdict and judgment for the plaintiff below.

TAYLOR, C. J.,    (after stating the facts.)

At the trial, after the plaintiff had introduced evidence tending to prove that his intestate on the fourth of July, 1897, was a brakeman on a train of the defendant's made up at Cantonment on defendant's line of road and on that day run from thence towards Muscogee in said county of Escambia, Florida, and that between Cantonment and Muscogee at a distance of from one and a half to two miles from Cantonment the said train ran into a cut in

which the track curved and in the said cut and upon the said curve struck a hand-car, and that by said collision several cars of the said train were derailed and destroyed and the said Joseph Jones killed; and that said train consisted of many flat cars and a box car, all of which preceded the engine in the direction in which it was running; and tending to prove negligence on the part of the defendant in the manner in which the train was made up, and in which it was operated, and in the rate of speed in which it was run, and in its running into a sharp and long curve without proper precautions, the plaintiff introduced as a witness one Lambert who, having testified over the objection of the defendant that before reaching the said cut a public road crossed the railroad track, was asked the following question: "Did or not the engineer in charge of said train whistle before he reached the said cross-road and before he reached the curve at said cut?" To this question the defendant objected on the ground that it sought to elicit testimony that was impertinent and irrelevant, and because there was no allegation in the declaration of the existence of the cross-road aforesaid, and because there was no allegation in the declaration of negligence on the part of the defendant in not whistling upon the approach to the cross-road, or to the said curve or cut. The judge overruled this objection and the defendant excepted, and this ruling is assigned as the first error. The witness answered that the engineer in charge of said train did not blow his whistle before he reached the cross-road, nor before he reached the said curve or cut. It is contended here in support of this assignment that the declaration in both of its counts predicates the negligence complained of upon certain specifically expressed acts of negligence that do not include the failure to sound

the whistle at the cross-road or at the curve or cut, and that consequently no evidence is admissible in reference to such act of negligence. The first count of the declaration, we think, is subject to this contention, and under such first count, if standing alone, the testimony would have been inadmissible, but under the second count we think the questioned testimony was pertinent and properly admitted. The second count, after alleging the negligent construction of the train in having flat and box cars attached and propelled in front of the engine charges that "said train of cars, while so made up, * * * was so negligently run and operated by the defendant and its servants at a fast and dangerous rate of speed through a deep cut and around a sharp curve on the line of said railroad * * * that the said train ran into and collided with a hand-car on said railroad track at said cut, and was thereby thrown from the track and wrecked, thereby injuring the said Joseph Jones," etc.

The duty to sound the whistle of a moving locomotive, where the exigency exists calling for such signal, is as much a part of the proper operation of a train of cars as is the opening or closing of the engine's throttle, and the failure to sound it where the exigency demands it, may, with perfect propriety, be expressed by the general expression: "a negligent operation of running of such train." The general allegation of a negligent operation of the train made in the second count of the declaration is not so wholly limited or qualified by the expression therein, "at a fast and dangerous rate of speed through a deep cut and around a sharp curve," as to exclude any other phase of negligence than that of fast running; but, as expressed in the second count, "the train was so negligently run and operated at a fast and dangerous rate of speed," &c.,

the general allegation of negligent operation calls for further explanation to make the negligence appear, and this further exxplanation can be supplied in the proofs, as was done in this case by showing that the negligent operation consisted of running a train of cars made up of flat and box cars propelled in front of the engine at a fast and dangerous rate of speed over a crossing place and into a deep, sharply curved cut without giving any signals or warning with the engine's whistle, in consequence of which a collision with a hand-car followed resulting in the derailment of the train and in the death of plaintiff's intestate. The rule established in this State in negligence cases is that it is not necessary for the declaration to set out the *facts constituting the negligence*, but an allegation of sufficient acts causing the injury, coupled with an averment that they were negligently and carelessly done will be sufficient. Walsh v. Western Ry. Co. of Florida, 34 Fla. 1, 15 South. Rep. 686; Jacksonville, T. & K. W. Ry. Co. v. Jones, 34 Fla. 286, 15 South. Rep. 924; Jacksonville, T. & K. W. Ry. Co. v. Garrison, 30 Fla. 557, 11 South. Rep. 929; Consumers Electric Light, &c., Co., v. Pryor, 44 Fla. 354, 32 South. Rep. 797. And where the negligence is alleged in general terms, and not confined to any specific acts of negligence, any acts of negligence contributory to the injury may be shown in proof.

The court of its own motion gave the following charge: "If you believe that at the time of his death the deceased had a minor sister to whom he stood in the position of a parent and whom he supported, and that she was dependent upon him for her support, then she would have a right to sue for the support which she lost by reason of his death, and such right of hers would deprive this plaintiff as administrator of Joseph Jones of any right to sue; and if you believe that state of facts to exist, then with-

out reference to the question of negligence or want of neg-
ligence on the part of the Louisville & Nashville Railroad
Co. as causing the death of Joseph Jones, your verdict
would be in favor of the defendant, the plaintiff not being
entitled to recover under these circumstances.  If, on
the other hand, you should find from the evidence that
the minor sister, if such sister existed, of Joseph Jones
was living with her father, and that he contributed to her
support, and that anything which the deceased Joseph
Jones may have contributed to her support, if he did so,
was voluntarily contributed—which he was under no obli-
gation to give, and which he could refuse to give at any
time, as her father—if, as I have already stated, she lived
with her father and he was also supporting her, and that
it was not necessary to her support that the deceased Jo-
seph Jones should make contributions to her support—
then she would not be dependent upon him within the
meaning of the law, and the plaintiff would be entitled
to maintain this action if he has shown the other essential
facts necessary to a maintenance of the action." This
charge was excepted to and is assigned as the second er-
ror.  This charge was predicated on testimony tending
to prove the following facts: The intestate at the time of
his death had living a minor sister then aged about elev-
en years.  At the birth of this sister the intestate's father
the plaintiff, had given the sister to the intestate, who had
promised to support her and look out for her, and that he
had supported her and looked out for her generally from
that time to the time of his death; that both the deceased
and his sister lived with their parents at heir faher's home,
and that deceased almost entirely supported his said sis-
ter.  This charge was erroneous for two reasons, (1) be-
cause the facts in proof upon which it was predicated
did not justify some of the hypotheses of fact contained

therein, and (2) because it erroneously states the law as to who, *as dependents for support,* are entitled to recover under our statutes giving the right of recovery for death by wrongful act. The error in giving it necessitates a reversal because the subject of the charge vitally affected the substance of the right of action itself in the plaintiff who sued. At the common law no one had any right to recover for the negligent or wrongful death of another, and the right of recovery in such cases is due entirely to the statute giving such a right, and it exists only in such persons as the statute gives it to. Section 2 of Chapter 3439, laws of 1883, brought forward as section 2343 Revised Statutes, gives the right of recovery (1) to the widow or husband of the deceased, as the case may be; if there is neither widow or husband then (2) to the minor child or children; and where there is neither widow nor husband or minor children then (3), to any person or persons dependent on the person killed for a support; and, where there is neither of the above classes then (4), to the executor or administrator of the person killed. In the case of Duval v. Hunt, 34 Fla. 85, 15 South. Rep. 876, where this statute was involved, and where the question of parties to such actions was fully considered and discussed, it was held that "from the terms of the statute itself, and by the judicial construction placed upon similar statutes, the extsience of the right of action in any of these named classes of persons, commencing with the *second* class above, is *wholly dependent* upon the fact whether there is any person *in esse* belonging to any of the classes who are given by the statute the *precedent right* over him to maintain the action. For example, if there is in existence a legal widow of the deceased, then she alone has the right of action, and no right of action vests in either minor children, dependents or personal

representatives; and if there is neither husband or widow, but a minor child, such minor child would alone have the right to recover, and dependents as such and personal representatives would not have any right to recover. The existence or non-existence of any one having the *precedent right of action* under the statute enters into the very *substance of the right of action itself* when instituted by any of the named classes of persons after the first." It follows from this that if the minor sister of the deceased, mentioned in the challenged charge, was in law and in fact a dependent upon the deceased for a support, then the right to recover vested in her to the exclusion of the administrator. By special plea the defendant alleged the existence of this sister as a dependent for support upon the deceased, and in bar of the plaintiff's right to recover as administrator, and, as before stated, this charge involved the very right of the plaintiff to recover at all in the case independently of any question of negligence or damage sustained, and its erroneous statement of the law as to who came within the statutory category of dependents for support went to the vitals of the case. In the case of Duval v. Hunt, *supra,* it was also held that "where the suit is brought by a person who bases his right to recover upon the fact that he is a dependant upon the deceased for support, then he must show, regardless of any ties of relationship or strict *legal right* to such support, that he or she was, either from the disability of age, or non-age, physical or mental incapacity, coupled with the lack of property means, dependent in fact upon the deceased for a support." In that case one of the plaintiff's was a minor niece of the deceased who had lived with her grand-mother, who was the mother of the deceased, from her earliest infancy and who, with the mother and sisters

26  S. C.

of the deceased, had lived with him, being cared for, pro-
tected and supported by him for years before his death.
The father of this niece was alive, strong and healthy,
but had not in fact supported her for years, but the de-
ceased uncle did.  Under these circumstances, the niece
being without property, it was held in that case that she
had the right, as a dependent for  support, to recover.
That her *reasonable expectancy* was that he would have
continued such support, and that the loss sustained in
this *expectancy,* coupled with the dependence of her mi-
nority and lack of means gave her the right to sue, and
that it made no difference that her own father was alive,
strong and healthy.  The challenged charge was inconsis-
tent with this construction of the statute in that it made
the right of the minor sister to the status of a dependent
for support upon her deceased brother to depend, not
District 15—J. B. Crews, Lake Butler, Fla.
port formerly voluntarily contributed by him, but upon
the existence of a *legal obligation* on his part to render
such support, and in this respect the charge is chiefly er-
roneous.  According to the facts upon which it was pred-
icated as they are given to us in the abstracts of the re-
cord, we do not think that the hypothesis in the charge
to the effect that the sister was suppored by both the fath-
er and her deceased brother was warranted by the facts.

The defendant requested the court to give in charge to
the jury the following:  "In ascertaining the amount of
estate which the deceased would have accumulated by the
end of his probable life if he had not been killed, you will
tion any real estate which he would then have accumu-
lated."  Also the folowing:  "In ascertaining the amount
of the estate which the deceased would have left at the
end of his probable life if ht had not been killed, you will
exclude any accumulation which would arise from the in-

come from property or investments or employment of capital, and take only into consideration his accumulations from his net earnings reduced to their present value as heretofore directed." The judge refused to give both of these charges and such refusals are assigned as the third and fourth errors.

There was no testimony even tending to prove that the deceased had ever accumulated, or was about to acquire or had any prospect or expectation of acquiring any real estate, or that he had any income from property or investments, or that he had, or was about to have, any prospect or expectation of having any property or capital to invest or of any income from such sources. These charges, therefore, had no basis in the evidence and there was no error in their refusal.

The fifth and last assignment of error is expressly abandoned here.

For the error found the judgment of the Circuit Court is reversed and a new trial ordered, at the cost of the defendant in error.