ON REHEARING DENIED

NESBITT, Judge.
Appellants Nathan Mizrahi and Ava Ruth-man moved for rehearing and/or clarification of our earlier opinion in-this matter, Mizrahi v. North Miami Medical Center, Ltd., 23 Fla. L. Weekly D32I (Fla. 3d DCA Jan.28, 1998). We deny rehearing, but upon further review' of the issue raised in this case, grant appellants’ motion for clarification. Accordingly, we withdraw our original opinion and replace it with the following.
The appellants are the surviving adult children of Morris Mizrahi, who died in May 1993, allegedly as a result of the medical malpractice of one or, more of the appellees. The appellants brought a wrongful death suit against the appellees — North Miami Medical Center and various physicians who had treated the decedent. The trial court granted summary judgment for the hospital and physicians, based on section 768.21, Florida Statutes (1995) — part of Florida’s Wrongful Death Act — which states in pertinent part:
(3) Minor children of the decedent, and all children of the decedent if there is no surviving spouse, may also recover for lost parental companionship, instruction, and guidance and for any mental pain and suffering from the date of injury.
^ * * *
(8) The damages specified in subsection (3) shall not be recoverable by adult children ... with respect to claims for medical malpractice ....
The appellants , contend on appeal that section 768.21(8) is unconstitutional, as violative of the Equal Protection Clause of both the federal and Florida constitutions. We disagree and hereby affirm the- summary judgment for the hospital and physicians.[1] We also certify the following question to the Florida Supreme Court as one of great public importance:
DOES SECTION 768.21(8), FLORIDA STATUTES (1995), WHICH IS PART OF FLORIDA’S WRONGFUL DEATH ACT, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FLORIDA AND FEDERAL CONSTITUTIONS, ' IN THAT IT PRECLUDES RECOVERY OF NONPECUNIARY DAMAGES BY A *828 DECEDENT’S ADULT CHILDREN[2] WHERE THE CAUSE OF DEATH WAS MEDICAL MALPRACTICE WHILE ALLOWING SUCH CHILDREN TO RECOVER WHERE THE DEATH WAS CAUSED BY OTHER FORMS OF NEGLIGENCE?
We are not persuaded by appellants’ argument that section 768.21(8) violates the equal protection guarantee of the federal and Florida constitutions.[3] First, no existing remedy has been denied to persons in the appellants’ position, as adult children never enjoyed a statutory or common law right to collect wrongful death damages in circumstances where a parent died as a result of medical malpractice. Prior to the enactment of chapter 90-14, Laws of Florida, the Wrongful Death Act only permitted minor children to recover pain and suffering damages due to the death of a parent. Chapter 90-14 expanded recovery for wrongful death to all children of a decedent not survived by a spouse, for lost parental companionship and for mental pain and suffering. However, chapter 90-14 also explicitly precluded the application of this expanded recovery to adult children where the cause of the wrongful death was medical malpractice. While this indicates a disparate treatment between adult children of a person who died as a result of medical malpractice and adult children of a person who died as a result of other negligence, we do not find this disparate treatment to be constitutionally infirm.
In other words, we find no equal protection violation because of the separate treatment of those in the appellants’ position — adult children of a person who wrongfully died as a result of medical malpractice. Since the right to wrongful death damages is not a fundamental right[4] and those in the appellants’ position are not a suspect class, section 768.21(8) would be unconstitutional as a violation of equal protection only if the challenged classification bears no rational relationship to a legitimate state interest. See, e.g., State v. Leicht, 402 So.2d 1153 (Fla. 1981). In fact, under the rational basis test, the inquiry required of the court is “only whether it is conceivable that the ... classification bears some rational relationship to a legitimate state purpose.” Florida High School Activities Ass’n v. Thomas, 434 So.2d 306, 308 (Fla.1983) (emphasis added).
We find that the statute’s disparate treatment of medical malpractice wrongful deaths does bear a rational relationship to the legitimate state interest of ensuring the accessibility of medical care to Florida residents by curtailing the skyrocketing medical malpractice insurance premiums in Florida. See § 766.201(1), Fla. State. (1995). Obviously, these escalating insurance costs adversely impact not only physicians but also, ultimately, their patients through the resultant increased cost of medical care.
The legislature’s purpose in creating the challenged classification is crystal clear and certainly qualifies as a “legitimate state interest”. In 1986, the legislature created an Academic Task Force for the Review of Tort and Insurance Systems.. This Task Force *829 was directed to investigate the effect of increasing medical malpractice insurance premiums on medical costs to patients; its investigation revealed a crisis in the cost of medical care in Florida. The Task Force’s findings were incorporated into a 1988 change, to Florida’s medical malpractice statutes [5], specifically enacted as section 766.201, which states:
(a) Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased medical care costs for most patients and functional unavailability of malpractice insurance for some physicians .... (c) The average cost of defending a medical malpractice claim has escalated in the past decade to the point where it has become imperative to control such cost in the interest of the public need for quality medical services.
§ 766.201, Fla. Stat. (1995). In 1990, the legislature again referred to and discussed the medical malpractice crisis — specifically its adverse impact on the accessibility of health care for Florida residents — during the passage of section 768.21 of the Wrongful Death Act. The exclusion of adult children of persons whose death had been caused by medical malpractice, contained in subsection (8), was expressly linked to the same rationale expressed in section 766.201, cited above. See Act Relating to Wrongful Death: Hearings on S. 32b Before Fla. Senate, Fla. Senate, 1990 Session (Apr. 17, 1990); Hearings on H. 709 Before Fla. House Judiciary-Civil Comm., Fla. House, 1990 Session (Apr. 16,1990).
In our view, it is clear that medical malpractice wrongful deaths are in a different category than wrongful deaths caused by other forms of negligence. The difference is this — medical malpractice wrongful deaths adversely impact upon medical malpractice premiums in Florida and, ultimately, upon the accessibility of health care to Florida citizens, whereas wrongful deaths caused by other forms of negligence simply do not impact these “crisis” areas. This distinction is ‘precisely the one upon which the legislature’s classification in section 768.21(8) is drawn. It is beyond question that the accessibility of health care for Florida residents, preserved by curtailing medical malpractice costs, is a legitimate interest of the state. See Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365, 367-68 (Fla. 1981) (statutory classification in section 768.50 requiring any judgment in a medical malpractice case — but not in other negligence cases — be reduced by the amount plaintiff had received from collateral sources bears a reasonable relation to legitimate goal of curtailing medical malpractice premiums in order to preserve availability of quality health care to Florida residents). Thus, we find there is a “rational basis” for the classification.
The statute as written allows minor children who suffer lost parental companionship, instruction, and guidance, pain and suffering, to recover for those losses regardless of the type of negligence precipitating the claim. In doing so, it affords the broadest recovery to those arguably most in need of compensation for the type of damages at issue. At the same time, in an effort to control skyrocketing medical costs, the statute restricts these limited basis for recovery, when made by adult children, arguably those better able to survive the specific types of harm at issue.
The fact that the legislature, through chapter 90-14, chose to expand avenues of wrongful death recovery to certain classes of survivors does not mean that it was required to open the door to all classes.of survivors. The appellants have failed to overcome the presumption of section 768.21(8)’s constitutionality. See Florida Dep’t of Education v. Glasser, 622 So.2d 944, 946 (Fla.1993); Belk-James, Inc. v. Nuzum, 358 So.2d 174 (Fla. 1978). It is well established that this presumption of validity will survive unless the challenging party proves beyond a reasonable doubt that the statute is unconstitutional — that there is no conceivable factual predi cate to support the classification the statute contains. See Gluesenkamp v. State, 391 So.2d 192, 200 (Fla.1980); A.B.A. Industries, Inc. v. City of Pinellas Park, 366 So.2d 761, 763 (Fla.1979). The appellants have not met this difficult burden.
*830 It is not the function .of the courts to agree or disagree with whether the factual predicate actually exists, nor to quibble with the means selected by the legislature to accomplish its stated purpose for the challenged classification, so long as the classification is not wholly arbitrary. A statutory classification will not be invalidated merely because it is not the best possible means of achieving the stated purpose of the legislature. See Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239, 1241-43, 1243 (11th Cir.1991)(“even if the court is convinced the [legislature] made an improvident, ill-advised, or unnecessary decision, ... it must uphold the act if it bears a rational relation to a legitimate government purpose”); In re Estate of Greenberg, 390 So.2d 40, 42 (Fla.1980); 10 Fla. Jur.2d Constitutional Law § 413 (1998).
For the aforementioned reasons, we agree with the trial court that section 768.21(8) is constitutional.
Summary judgment for the appellees affirmed. Rehearing denied; question certified.

. Our original opinion followed the reasoning and authority set forth in Stewart v. Price, 704 So.2d 594 (Fla. 1st DCA 1997). Because Stewart still pends rehearing, we now issue this opinion, acknowledging' a debt to the Stewart Court’s rationale.

. Under section 768.21, the adult children of the decedent only recover nonpecuniary damages, if at all, in instances where the decedent had no surviving spouse.

. As appellants did not raise a substantive due process challenge to section 768.21(8), either at the trial level or on appeal, we need not address the statute’s constitutionality with regard to substantive due process. Notwithstanding this, we do not find that substantive due process is at all implicated here. The constitutional guarantee of substantive due process protects fundamental rights from encroachment by the government, and fundamental rights are those rights flowing from either the federal or Florida constitution. See De Ayala v. Florida Farm Bureau Cas. Ins. Co., 543 So.2d 204, 206 (Fla.1989). Certainly, there is no such constitutional right to wrongful death damages; wrongful death actions did not exist at common law and were created by the legislature. See White v. Clayton, 323 So.2d 573, 575 (Fla.1975). Thus, no fundamental right is implicated here. Further, where no fundamental right is at stake, the standard for evaluating substantive due process challenges is virtually identical to the rational basis test for evaluating equal protection challenges. See 10 Fla. Jur.2d Constitutional Law § 427 (1998), citing Wood v. United States, 866 F.2d 1367, 1371 (11th Cir. 1989). Therefore, the rational basis analysis we apply to appellants' claim would likewise apply to a substantive due process claim.

.A fundamental right is one flowing from either the federal or Florida constitution. See De Ayala, 543 So.2d at 206 (Fla.1989). Wrongful death damages are clearly not such a right.

. Sections 766.201 through 766.212, Florida Statutes.