718 So.2d 205 (1998)
Jean STEWART and Kathryn Reynolds, Co-Personal Representatives of the Estate of Mabel Pittman, Deceased, Appellants,
v.
I.B. PRICE, M.D., Appellee.
No. 95-996.
District Court of Appeal of Florida, First District.
July 29, 1998.
*207 Tari Rossitto-Van Winkle, Tallahassee, for Appellants.
Esther E. Galicia of George, Hartz, Lundeen, Flagg & Fulmer, Fort Lauderdale, for Appellee.

CORRECTED OPINION
VAN NORTWICK, Judge.
Jean Stewart and Kathryn Reynolds, the daughters and co-personal representatives of the estate of Mabel Pittman, appeal an adverse final judgment following a jury trial in their medical malpractice action against appellee, I.B. Price, M.D. We agree with appellants that reversible error was committed by the exclusion of their primary expert witness, and therefore reverse and remand the cause for a new trial.

Factual and Procedural Background
Pittman began seeing Dr. I.B. Price at least monthly commencing June 6, 1985. She was treated for a wide variety of ailments. In March 1987, Pittman complained of redness and blistering on her right leg and cortisone was prescribed by Dr. Price. Thereafter, Pittman's right great toe became swollen and she noticed, according to her videotaped deposition, a small, whitish lesion under the toenail. Dr. Price prescribed fungal cream for the toe. On subsequent visits, Pittman continued to complain about the toe, which had continued to swell and cause her significant pain. In February 1989, Pittman sought treatment regarding her toe from another physician and she was eventually referred to Dr. Evans who performed a biopsy of the lesion. Laboratory tests revealed melanoma cancer and, as a result, Pittman's toe was amputated. By the time of the amputation, however, the cancer had metastasized. Although repeated surgical interventions were undertaken in attempt to control the cancer, Mabel Pittman died on May 15, 1991. The pathologist who performed the autopsy testified that massive gastro-intestinal bleeding was the cause of death, with cirrhosis and cancer as the contributing factors. Dr. Evans testified that cancer was the cause of death.
Before her death, Pittman filed suit against Dr. Price alleging negligent diagnosis and treatment, intentional misrepresentation and concealment of the condition, and negligent care and treatment of cirrhosis. After Pittman's death, her daughters and co-personal representatives, the appellants, were substituted as plaintiffs and the complaint was amended to include four additional tort claims and a challenge to the constitutionality of section 768.21(8), Florida Statutes (1991). Summary judgment issued in favor of the defendant on most of the counts. By the time of trial, the only issue remaining for the jury was the claim of medical malpractice.
At trial, appellants sought to call Paul Bader, M.D., as an expert in internal medicine. Dr. Bader is a medical doctor board certified in internal medicine. Upon the appellee's objection, the trial court prohibited any testimony from Dr. Bader regarding the standard of care for internists on the rationale that Dr. Price is a general practitioner or provided only general practitioner care to Pittman. Accordingly, the lower court ruled that Dr. Bader did not satisfy the expert witness requirements of section 766.102(2)(b), Florida Statutes (1991). For the reasons discussed below, this ruling was error, and the record does not conclusively demonstrate that it was harmless error.

Exclusion of Expert Testimony
Section 766.102(1) requires that a party seeking damages based upon death or personal injury resulting from the negligence of a health care provider must establish that negligence based upon proof that the health care provider breached the prevailing standard of care that is recognized by reasonably prudent "similar health care providers" as acceptable and appropriate. Section 766.102(2)(b) provides in pertinent part that if a health care provider who is alleged to have been negligent "holds himself out as a specialist," a similar specialist may testify as to the standard of care.[1] In the instant case, *208 there is no dispute that Dr. Bader is a specialist in internal medicine. Thus, should Dr. Price be considered as a specialist in internal medicine, under section 766.102(2)(b) Bader would qualify to testify as to the standard of care for internal medicine specialists. The salient question then becomes whether Price held himself out as a specialist in internal medicine. Our review of the undisputed facts in the record convinces us that he did.
Although the admissibility of expert testimony is generally within the discretion of the trial court, see Ortagus v. State, 500 So.2d 1367, 1371 (Fla. 1st DCA 1987), because the statutory criteria under section 766.102 were met, the trial court below abused its discretion by precluding the testimony of a "similar health care provider." The determination as to whether a health care provider "holds himself out as a specialist" under the statute is a fact question for the trial court. Accordingly, here, where the trial court found that Dr. Price was a family practitioner and not an internal medicine specialist, our scope of review is whether the trial court's finding is supported by competent substantial evidence in the record. See Florida East Coast Ry. Co. v. Department of Revenue, 620 So.2d 1051 (Fla. 1st DCA), rev. denied, 629 So.2d 132 (Fla.1993).
It is not disputed that the sign outside of Dr. Price's office states "Internal Medicine." In addition, his letterhead reads: "Dr. Price, M.D., P.A., Internal Medicine and Cardiology." Furthermore, Dr. Price admitted at trial that he considers himself "an internal medicine specialist." There is no basis in the record for finding that Dr. Price represented himself to the public as a general practitioner, as found by the lower court. The fact that Dr. Price did not represent that he is "certified" in internal medicine is not dispositive for determining the defendant's status under section 766.102(2)(b). Any finding that Dr. Price only rendered care to Pittman at the level of a general practitioner, despite the fact that Dr. Price otherwise held himself out as a specialist in internal medicine, is also without support in the record. The relevant inquiry of the trial court for determining the required specialist training and qualifications of an expert is whether the defendant physician, during the course of medical treatment, satisfied any of the three prongs of section 766.102(2)(b). Here, the undisputed facts in the record establish that Dr. Price held himself out as a specialist in internal medicine. It was thus error to exclude Dr. Bader's testimony.
Further, we cannot agree with appellee that this error is harmless. During his deposition, Dr. Bader plainly testified that an internist should examine his patients from head to toe on a yearly basis. This portion of the deposition was proffered, but was denied admission into evidence by the trial court. Dr. Price testified at trial that Pittman never complained to him about her toe (the cortisone prescription refills were for her legs, claimed Price), and so he never examined the toe. Obviously, there is a question as to whether Dr. Price breached the standard of care owed to his patients, and Dr. Bader's testimony is highly relevant to that question.
Appellee suggests that any error in failing to admit the expert testimony of Dr. Bader regarding the standard of care for internists was cured by the admission of the testimony of Dr. Evans. We cannot agree. Among other things, Dr. Evans testified at trial that, if Dr. Price had performed a complete "head-to-toe" physical examination on Pittman sometime between 1986 and 1989, then Dr. Price would have satisfied the standard of care governing a "general medical practitioner" or "a family practice physician." The record reflects that Dr. Price did do a "head-to-toe assessment" in October 1987 of Pittman *209 prior to her admission into Gadsden Memorial Hospital.
The appellants' claim, however, was premised upon the standard of care owed by internal medicine specialists, not general or family practitioners. Dr. Bader's testimony of the standard of care governing a specialist in internal medicine would have supported a finding that an annual examination was required by the specialist's standard of care. We cannot conclude that under the circumstances of the instant case exclusion of the appellants' primary expert constitutes harmless error, especially since this case, as many medical malpractice cases, was necessarily a "battle of the experts." See Cenatus v. Naples Community Hosp., Inc., 689 So.2d 302 (Fla. 2d DCA 1997).

Constitutionality of Section 768.21(8)
Appellants argued below, and renew their argument on appeal, that section 768.21(8), Florida Statutes (1991), is unconstitutional on its face and as applied. Section 768.21(8) provides that adult children cannot recover damages pursuant to section 768.21(3) "for lost parental companionship, instruction, and guidance and for mental pain and suffering from the date of injury" when liability is premised on a claim for medical malpractice as defined in section 766.106(1). Because the lower court found that Pittman's death was the result of cancer and not as a result of some of her other ailments, if the estate could establish medical negligence in the failure to diagnose the cancer, under section 768.21(8), the estate would be entitled to damages only for lost earnings, loss of the net accumulations of the estate, medical and/or funeral expenses which have become a charge against the estate. Pittman's claim for her pain and suffering are not recoverable under the wrongful death statute.[2]
We do not find persuasive, however, appellants' arguments that section 768.21(8) denies the federal and state constitutional guarantee of equal protection of the laws and due process or infringes upon the state constitutional guarantee of access to courts.[3] Our analysis first begins with the recognition that under the common law an adult, who has not been dependent on a parent, was not entitled to recover damages for the wrongful death of a parent. U.S. v. Durrance, 101 F.2d 109 (5th Cir.1939); Louisville & N.R. Co. v. Jones, 45 Fla. 407, 34 So. 246 (1903). Prior to the enactment of chapter 90-14, Laws of Florida, under section 768.21(3) only minor children could recover damages for their pain and suffering upon the wrongful death of a parent. See Weimer v. Wolf, 641 So.2d 480 (Fla. 2d DCA 1994). In chapter 90-14, the legislature amended section 768.21(3), among other things, to expand the definition of "survivors" who may recover for the wrongful death of a parent. Thus, in addition to minor children, chapter 90-14 authorized all children of the decedent to recover for lost parental companionship, instruction and guidance and for mental pain or suffering, when there is no surviving spouse. At the same time, however, in chapter 90-14 the legislature precluded the application of this expanded "survivors" definition to adult children where the cause of the wrongful death is the result of medical malpractice. Thus, chapter 90-14 treated adult children of a person who dies as a result of medical malpractice differently than adult children whose parent dies as a result of a cause other than medical malpractice.
We do not find that an equal protection violation is presented by this separate treatment. Had the legislature eliminated an existing remedy, we would be required to employ a different constitutional analysis. See Kluger v. White, 281 So.2d 1 (Fla.1973). Because no statutory or common law right existed for the adult children of persons who wrongfully died as a result of medical malpractice, however, section 768.21(8) may be declared an unconstitutional denial of equal protection only if it bears no rational relationship to a legitimate state objective. See State v. Leicht, 402 So.2d 1153 (Fla.1981). *210 Florida's wrongful death act was found constitutional even though it provided no general right of recovery to adult non-dependent children of persons subject to wrongful death of any cause. Henderson v. Insurance Co. of North America, 347 So.2d 690 (Fla. 4th DCA 1977); and Capiello v. Goodnight, 357 So.2d 225 (Fla. 2d DCA 1978). We find no constitutional barrier to the legislature's subsequent limited grant of the right to recover damages for pain and suffering to adult, non-dependent children. The legislature's choice to exclude from such right adult children of persons who wrongfully died as a result of medical malpractice bears a rational relationship to the legitimate state interests of limiting increases in medical insurance costs. See § 766.201(1), Fla. Stat. (1995).[4]
Chapter 90-14 closed no courthouse doors. Rather, it opened, albeit only for some, those doors by creating a limited right of recovery where no recovery had previously existed at all. We find section 768.21(8) constitutes therefore neither a denial of due process nor a denial of access to courts. In short, appellants have failed to overcome the presumption of constitutionality of this statute. See Florida Dep't of Education v. Glasser, 622 So.2d 944 (Fla.1993).

Conclusion
We find the other issues raised to be without merit.[5] Accordingly, we affirm in part, reverse in part, and remand for a new trial.
WOLF, J., concurs.
BENTON, J., concurs with written opinion.
BENTON, Judge, concurring.
Inasmuch as no liability had been found, it was unnecessary for the trial court to reach the question of the constitutionality of section 768.21(8), Florida Statutes (1991). Nor would I reach that question at this juncture. I concur in reversing for a new trial on liability, because the trial court erred, for the reasons the majority has set out, in excluding Dr. Bader's testimony.
NOTES
[1] Section 766.102(2)(b) provides:

If the health care provider whose negligence is claimed to have created the cause of action is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a "similar health care provider" is one who:
1. Is trained and experienced in the same specialty; and
2. Is certified by the appropriate American board in the same specialty.
However, if any health care provider described in this paragraph is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a "similar health care provider."
[2] While section 46.021, Florida Statutes, does provide that no cause of action dies with the claimant, the wrongful death statute specifically limits the category of damages recoverable by a decedent's estate. § 768.20, Fla. Stat.; see Martin v. United Sec. Serv., 314 So.2d 765 (Fla.1975).
[3] We address the constitutional challenge to section 768.21(8), Florida Statutes (1991), because of the reasonable possibility that on remand the question of damages will be addressed.
[4] As adopted in 1988, section 766.201(1), Florida Statutes (1995), provides in pertinent part:

(1) The Legislature makes the following findings:
(a) Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased costs for most patients and functional unavailability of malpractice insurance for some physicians.
(b) The primary cause of increased medical malpractice liability insurance premiums has been the substantial increase in loss payments to claimants caused by tremendous increases in the amounts of paid claims.
* * * * * *
(d) The high cost of medical malpractice claims in the state can be substantially alleviated ... by imposing reasonable limitations on damages....
[5] Appellants have argued that the lower court erred (i) in excluding evidence that Dr. Price failed his board examination; (ii) in issuing a jury instruction regarding the definition of similar health care provider; (iii) in excluding the qualifications of a certain witness, Dr. Evans; (iv) in denying a mistrial upon the extended continuance; (v) in excluding portions of Mrs. Pittman's video deposition; (vi) in granting a directed verdict as to the cause of death of Pittman; (vii) in allegedly exhibiting bias towards appellants; and (viii) in striking one juror but not striking another.