761 So.2d 1040 (2000)
Nathan MIZRAHI, et al., Petitioners,
v.
NORTH MIAMI MEDICAL CENTER, LTD., etc., et al., Respondents.
Lynn Garber, etc., Petitioner,
v.
Lawrence Snetman, M.D., et al., Respondents.
Nos. SC93649, SC93650.
Supreme Court of Florida.
April 20, 2000.
Rehearing Denied July 5, 2000.
Arnold R. Ginsberg of Ginsberg & Schwartz, Miami, Florida; Gaebe, Murphy, Mullen & Antonelli, Coral Gables, Florida, and Spector, Levine & Zimmerman, Miami, Florida, for Petitioner.
Janis Brustares Keyser of Gay, Ramsey & Warren, P.A., West Palm Beach, Florida; Hinda Klein of Conroy, Simberg & Ganon, P.A., Hollywood, Florida; John D. *1041 Kelner of the Law Offices of Kelner & King, LLP, Hollywood, Florida; Esther E. Galica of George, Hartz, Lundeen, Flagg & Fulmer, Fort Lauderdale, Florida; and W. Sam Holland of Hinshaw & Culbertson, Miami, Florida, for Respondent.
Harriet Rae Freeman, West Palm Beach, Florida, and Barbara Scheffer, Palm Beach Gardens, Florida, for Association for Responsible Medicine, Amicus Curiae.
Douglas M. McIntosh, and Jack Heda of McIntosh, Sawran & Craven, P.A., Fort Lauderdale, Florida, for Florida League of Healthsystems, Florida Hospital Association, Florida Medical Association, and The Association of Community Hospitals and Health Systems of Florida, Amicus Curiae.
PER CURIAM.
We have for review two decisions that pass upon the following question certified to be of great public importance:
DOES SECTION 768.21(8), FLORIDA STATUTES (1995), WHICH IS PART OF FLORIDA'S WRONGFUL DEATH ACT, VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FLORIDA AND FEDERAL CONSTITUTIONS, IN THAT IT PRECLUDES RECOVERY OF NONPECUNIARY DAMAGES BY A DECEDENT'S ADULT CHILDREN WHERE THE CAUSE OF DEATH WAS MEDICAL MALPRACTICE WHILE ALLOWING SUCH CHILDREN TO RECOVER WHERE THE DEATH WAS CAUSED BY OTHER FORMS OF NEGLIGENCE?
Mizrahi v. North Miami Med. Ctr., Ltd., 712 So.2d 826 (Fla. 3d DCA 1998); Garber v. Snetman, 712 So.2d 481 (Fla. 3d DCA 1998). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We answer the certified question in the negative.
In Mizrahi, the undisputed facts and the trial court's ruling are as follows:
The appellants are the surviving adult children of Morris Mizrahi, who died in May 1993, allegedly as a result of the medical malpractice of one or more of the appellees. The appellants brought a wrongful death suit against the appellees North Miami Medical Center and various physicians who had treated the decedent. The trial court granted summary judgment for the hospital and physicians, based on section 768.21, Florida Statutes (1995)part of Florida's Wrongful Death Act[.]
712 So.2d at 827. Petitioners appealed and the Third District Court of Appeal held that "the statute's disparate treatment of medical malpractice wrongful deaths does bear a rational relationship to the legitimate state interest of ensuring the accessibility of medical care to Florida residents by curtailing the skyrocketing medical malpractice insurance premiums in Florida." Id. at 828. In so holding, the Third District recognized that "escalating insurance costs adversely impact not only physicians but also, ultimately, their patients through the resultant increased cost of medical care." Id.
The undisputed facts as found by the trial court in the companion case, Garber v. Snetman, are as follows:
Plaintiff instituted this action against several physicians and a hospital seeking recovery for intentional infliction of emotional distress and for mental pain and suffering. On March 26, 1994, Frances Golub was admitted to Mount Sinai Medical Center for treatment following a suspected stroke. On April 13, 1994, Mrs. Golub underwent surgery to remove a suspected cancerous tumor from her pelvis. She died on May 8, 1994.
Mrs. Golub was seventy years old at the time of her death. She had never worked outside the home, did not have a spouse, and was survived only by Lynn Garber, her thirty-three-year-old daughter, the plaintiff in this action.
The claims for which Ms. Garber seeks recovery are governed by Chapters 768 and 766 of the Florida Statutes. She seeks damages for mental pain and *1042 suffering and for loss of support and services in her individual capacity, and for the net accumulations on behalf of her mother's estate.
Based on these facts, the trial court entered summary judgment for the respondents pursuant to section 768.21(8). On appeal, the Third District affirmed the trial court's order and certified the same question of great public importance as certified in Mizrahi.
The First District Court of Appeal recently addressed the same issue in Stewart v. Price, 718 So.2d 205 (Fla. 1st DCA 1998), wherein the court rejected the argument that section 768.21(8) denies the federal and state constitutional guarantee of equal protection under the law. The First District analyzed the issue as follows:
[U]nder the common law an adult, who has not been dependent on a parent, was not entitled to recover damages for the wrongful death of a parent. U.S. v. Durrance, 101 F.2d 109 (5th Cir.1939); Louisville & N.R. Co. v. Jones, 45 Fla. 407, 34 So. 246 (1903). Prior to the enactment of chapter 90-14, Laws of Florida, under section 768.21(3) only minor children could recover damages for their pain and suffering upon the wrongful death of a parent. See Weimer v. Wolf, 641 So.2d 480 (Fla. 2d DCA 1994). In chapter 90-14, the legislature amended section 768.21(3), among other things, to expand the definition of "survivors" who may recover for the wrongful death of a parent. Thus, in addition to minor children, chapter 90-14 authorized all children of the decedent to recover for lost parental companionship, instruction and guidance and for mental pain or suffering, when there is no surviving spouse. At the same time, however, in chapter 90-14 the legislature precluded the application of this expanded "survivors" definition to adult children where the cause of the wrongful death is the result of medical malpractice. Thus, chapter 90-14 treated adult children of a person who dies as a result of medical malpractice differently than adult children whose parent dies as a result of a cause other than medical malpractice.
Id. at 209. The First District then concluded that the "legislature's choice to exclude from such right adult children of persons who wrongfully died as a result of medical malpractice bears a rational relationship to the legitimate state interests of limiting increases in medical insurance costs. See § 766.201(1), Fla. Stat. (1995)."[1]Id. at 210.[2]
In support of this rationale, the Legislature referred to and discussed the medical malpractice crisis and its adverse impact on the accessibility of health care during the passage of section 768.21.[3] Legislators expressly linked the exclusion of adult children of medical malpractice decedents contained in section 768.21(8) to the health care crisis rationale expressed in section *1043 766.201. See Act Relating to Wrongful Death: Hearings on S. 324 Before Fla. Senate, Fla. Senate, 1990 Session (Apr. 17, 1990); Hearings on H. 709 Before Fla. House Judiciary-Civil Comm., Fla. House, 1990 Session (Apr. 16, 1990); Mizrahi, 712 So.2d at 829. Clearly, limiting claims that may be advanced by some claimants would proportionally limit claims made overall and would directly affect the cost of providing health care by making it less expensive and more accessible.
Accordingly, the instant statute which created a right of action for many while excluding a specific class from such action, and which exclusion is rationally related to controlling healthcare costs and accessibility, does not violate the equal protection guarantees of either the United States or Florida Constitutions. We therefore answer the certified question in the negative and approve the district court's decisions below.
It is so ordered.
HARDING, C.J., and SHAW, WELLS and ANSTEAD, JJ., concur.
LEWIS, J., concurs in result only.
PARIENTE, J., dissents with an opinion in which QUINCE, J., concurs.
PARIENTE, J. dissenting.
I dissent. There is no indication that the past medical malpractice crisis[4] continues into the present. If the medical malpractice crisis does not continue into the present, I fail to see how a past crisis can justify the permanent exclusion of an entire class of victims from seeking compensation for pain and suffering damages due to the wrongful death of their parents as a result of medical malpractice.
Indeed, it is a "settled principle of constitutional law" that although a statute is constitutionally valid when enacted, that statute may become constitutionally invalid due to changes in the conditions to which the statute applies. See Conner v. Cone, 235 So.2d 492, 498 (Fla.1970); see also Georgia S. & F. Ry. Co. v. Seven-Up Bottling Co. of Southeast Ga., 175 So.2d 39, 40 (Fla.1965). Accordingly, while it is not our role to reexamine legislative fact-finding, we also need not blindly accept the Legislature's conclusions, especially when such conclusions may no longer be valid due to changed conditions. See Seagram-Distillers Corp. v. Ben Greene, Inc., 54 So.2d 235, 236 (Fla.1951); see also Conner, 235 So.2d at 498.
Further, there is the additional question of whether there is a reasonable relationship between the outright denial of the right to recover damages by an entire class of adult children whose parents died as a result of medical malpractice and the legitimate state interest of ensuring accessibility to medical care. See Pinillos v. Cedars of Lebanon Hosp. Corp., 403 So.2d 365, 367 (Fla.1981). "The rational basis test requires that a statute bear a reasonable relationship to a legitimate state interest, and the burden is on the challenger to prove that a statute does not rest on any reasonable basis or that it is arbitrary." Id.
All other adult children who lose their parents as a result of other negligent conduct have the right to recover pain and suffering damages if their parent died without a spouse. See § 768.21(8), Fla. Stat. (1999). However, in the case of adult children of medical malpractice victims, the Legislature has denied compensation for mental pain and suffering not because the claims of the adult children are meritless, but because of the adult children's age and because their parents died as a result of medical malpractice. As to the reasonableness of the distinction drawn by the Legislature, I agree with the reasoning of Judge Schwartz in his concurring opinion *1044 in Garber v. Snetman, 712 So.2d 481, 482 (Fla. 3d DCA 1998):
I believe that it is contrary to the requirements of substantive due process and equal protection to discriminate between survivors of the victim of a wrongful death on the basis of their age only to accomplish the stated purpose of making medical malpractice insurance somewhat less expensive. To my mind, it is no less "unreasonable, arbitrary, capricious, discriminatory [and] oppressive", 10 Fla.Jur.2d Constitutional Law § 427, at 740 (1997), and cases cited, to restrict the right to recover on this basis than it would be for the legislature to do so as to survivors with blue eyes or heaven forfend!of less than a certain height.
In sum, there is no indication that the distinction drawn by the statute bears a reasonable relationship to a legitimate state interest associated with ensuring accessible health care. Further, there is no indication that the medical malpractice crisis that formed the basis for treating this class of survivors differently than all other adult children even continues to this day. I therefore believe that the challengers of this statute have met their burden and have demonstrated that the distinction drawn by the Legislature is arbitrary.
Finally, regardless of the constitutional question, I urge the Legislature to reconsider this exclusion and provide to adult children of parents who die as a result of medical malpractice the same rights afforded to the victims of every other tort action.
QUINCE, J., concurs.
NOTES
[1] As adopted in 1988, section 766.201(1), Florida Statutes (1995), provides in pertinent part:

(1) The Legislature makes the following findings:
(a) Medical malpractice liability insurance premiums have increased dramatically in recent years, resulting in increased costs for most patients and functional unavailability of malpractice insurance for some physicians.
(b) The primary cause of increased medical malpractice liability insurance premiums has been the substantial increase in loss payments to claimants caused by tremendous increases in the amounts of paid claims.
. . . .
(d) The high cost of medical malpractice claims in the state can be substantially alleviated... by imposing reasonable limitations on damages....
[2] The court correctly observed that "Chapter 90-14 closed no courthouse doors. Rather, it opened, albeit only for some, those doors by creating a limited right of recovery where no recovery had previously existed at all." Id.
[3] This Court acknowledged the existence of the medical malpractice crisis as a legitimate state interest in University of Miami v. Echarte, 618 So.2d 189, 196-97 (Fla.1993).
[4] See, e.g., University of Miami v. Echarte, 618 So.2d 189 (Fla.1993) (discussing the medical malpractice crisis and the related findings of the Academic Task Force for Review of the Insurance and Tort Systems).