POLSTON, J.,
dissenting.
Just as I dissented to the erroneous plurality and concurring in result decisions in Estate of McCall v. United States, 134 So.3d 894 (Fla. 2014), I dissent to the majority’s decision in this case. The majority continues to disregard our precedent’s rational basis standard as well as the Legislature’s policymaking role in our constitutional system. Under a proper rational basis analysis, the cap on noneconomic damages in section 766.118, Florida Statutes, easily passes constitutional muster.
The Florida Constitution guarantees that “[a]ll natural persons, female and male alike, are equal before the law.” Art. I, § 2, Fla. Const. Our precedent has interpreted this provision consistently with interpretations of the equal protection clause in the federal constitution. See, e.g., Duncan v. Moore, 754 So.2d 708, 712 (Fla. 2000). And because the classification alleged in this case does not involve a protected class or a fundamental right, this Court must employ the rational basis test. Id.
“Under a ‘rational basis’ standard of review a court should inquire only whether it is conceivable that the regulatory classification bears some rational relationship to a legitimate state purpose.” Fla. High Sch. Activities Ass’n v. Thomas, 434 So.2d 306, 308 (Fla. 1983). “The burden is upon the party challenging the statute or regulation to show that there is no conceivable factual predicate which would rationally support the classification under attack.” Id. Furthermore, under the rational basis test, “[i]t is not the court’s function to determine whether the legislation achieves its intended goal in the best manner possible, but only whether the goal is legitimate and the means to achieve it are rationally related to the goal.” Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach Cty., 496 So.2d 930, 938 (Fla. 4th DCA 1986).
Here, when enacting the noneconomic damages cap in section 766.118, the Legislature found that Florida’s medical malpractice crisis “threatens the quality and availability of health care for all Florida citizens,” that the “cost of medical malpractice insurance has increased dramatically during the past decade,” and that “both the increase and the current cost are substantially higher than the national average.” Ch. 2003-416, at § 1, Laws of Fla. The Florida Legislature concluded that physicians are forced “to practice medicine without professional liability insurance, to leave Florida, to not perform high-risk procedures, or to retire early from the practice of medicine.” Id. The Florida Legislature also found that “there are certain elements of damage presently recoverable that have no monetary value, except on a purely arbitrary basis, while other elements of damage are either easily measured on a monetary basis or reflect ultimate monetary loss” and that “the high cost of medical malpractice claims can be substantially alleviated by imposing a limitation on noneconomic damages in medical malpractice actions.” Id.
No one disputes that increasing the availability, quality, and affordability of *61 healthcare in Florida constitutes a legitimate state interest. This Court also has acknowledged that a medical malpractice insurance crisis constitutes a legitimate state interest under the rational basis test. See Mizrahi v. N. Miami Med. Ctr., Ltd., 761 So.2d 1040, 1042 n.3 (Fla. 2000); Univ. of Miami v. Echarte, 618 So.2d 189, 196-97 (Fla. 1993). Furthermore, the Legislature’s policy choice of a cap on noneconomic damages is rationally related to these legitimate state interests because “limiting claims, that may be advanced by some claimants would proportionally limit claims made overall and would directly affect the cost of providing health care by making it less expensive and more accessible.” Mizrahi, 761 So.2d at 1043. Therefore, applying the proper rational basis test, it is clear that the statutory cap does not violate Florida’s guarantee of equal protection.
Importantly, under the proper rational basis test, it is immaterial that the majority of this Court disagrees with the Legislature’s evidence regarding whether there was (or currently is) a medical malpractice crisis in Florida. It is also immaterial that a majority of this Court questions whether the Legislature’s policy choice of enacting a cap on noneconomic damages has resulted in insurance companies passing along savings to their physician customers.
Instead, under the rational basis test, “[t]he burden is upon the party challenging the statute ... to show that there is no conceivable factual predicate which would rationally support the classification under attack.” Fla. High Sch. Activities Ass’n, 434 So.2d at 308. In fact, “a legislative choice is not subject to courtroom fact-finding and may be based on rational spec-ulatiqn unsupported by evidence or empirical data.” F.C.C. v. Beach Commc’ns, Inc., 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). “A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification.” Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Thus, under the dictates of the rational basis test, if we can conceive of a possible factual predicate that provides a rational basis in furtherance of a legitimate state interest, the statute does not violate the constitutional guarantee of equal protection.
Applying the proper rational basis standard, as I explained in my dissent in McCall,'
the Florida Legislature could have rationally believed that the cap on noneco-nomic damages under section 766.118(2)(b) would reduce malpractice damage awards, which would thereby increase predictability in the medical malpractice insurance market and lead to reduced- insurance premiums. Then, as a result of decreased insurance premiums, physicians would be more willing to stay in Florida and perform high-risk procedures at a lower cost to Floridians.
134 So.3d at 930 (Polston, J., dissenting) (footnote omitted); see also M.D. v. United States, 745 F.Supp.2d 1274, 1281 (M.D. Fla. 2010) (“A cap applicable to each occurrence, in cooperation with caps individually applicable to each claimant, reduces damage awards as a matter of mathematical certainty, enhances needed predictability, places a calculable limit on the exposure of healthcare and insurance providers, reduces malpractice insurance premiums, and promotes the availability of quality healthcare.”). Additionally, “the Legislature simply may have felt that it was fairer to malpractice plaintiffs in general to reduce only the very large noneconomic damage awards, rather than to diminish the more modest recoveries for pain and suffering and the like in the great bulk of cases.” Fein v. Permanente Med. Grp., 38 Cal.3d 137, 211 Cal.Rptr. 368, 695 P.2d *62 665, 683 (1985); see also Smith v. Botsford Gen. Hosp., 419 F.3d 513, 520 (6th Cir. 2005) (“By limiting at least one component of health care costs, the noneconomic damages limitation is rationally related to its intended purpose..” (quoting Zdrojewski v. Murphy, 254 Mich.App. 50, 657 N.W.2d 721, 739 (2002))); Boyd v. Bulala, 877 F.2d 1191, 1197 (4th Cir. 1989) (holding that statutory cap on all damages, including noneconomic damages, does not violate equal protection because it “bears a reasonable relation to a valid legislative purpose—the maintenance of adequate health care services in the Commonwealth of Virginia”); Davis v. Omitowoju, 883 F.2d 1155, 1158 (3d Cir. 1989) (“Clearly[,j the Virgin Island’s decision to curb, through legislation, the high costs of malpractice insurance and thereby promote quality medical care to the residents of the islands, provides- a rational basis for capping the amount of damages that can be awarded a plaintiff.”); Lucas v. United States, 807 F.2d 414, 422 (5th Cir. 1986) (“Lucas has failed to convince us that there is no reasonable basis for the Texas legislature to conclude that this ceiling, on recovery ... is not conceivably related to the availability and cost of malpractice insurance and that such insurance and the distribution of medical care in Texas are not conceivably linked.”); Hoffman v. United States, 767 F.2d 1431, 1437 (9th Cir. 1985) (“It was reasonable for the lawmakers to believe that placing a ceiling on noneco-nomic damages would help reduce malpractice insurance premiums”).
Accordingly, the cap on noneconomic damages in medical malpractice actions is rationally related to the .legitimate state interest of increasing the .affordability, availability, and quality of medical care in Florida. Therefore, under the proper rational basis test that our long-standing precedent requires, the cap in section 766.118 passes constitutional, muster.
Moreover, as I explained in my dissent in McCall, the statutory “limitations on noneconomic damages are part of an overall legislative plan enacted in 2003 to address the rising costs of medical liability insurance and the affordability and availability of healthcare in Florida[:]”
Other components of the plan include new healthcare facilities regulations, insurance regulation, license requirements, and agency requirements. [See ch. 2003-416, Laws'of Fla.]
The legislative effort began with the convening of the House Select Committee on Medical Liability Insurance, which “conducted an inquiry into the possible causes and potential solutions to the vexing problems associated with the availability of medical liability insurance in Florida.” Fla. H. Select Comm. on Med. Liab. Ins., Select Comm, on Med. Liab. Ins. Rep., at 2 (March 2003) (available at Fla. Dept. of State, Fla. State Archives, Tallahassee, Fla.). The Select Committee examined “how the reduced availability of affordable medical liability insurance affects the availability of medical services” and was “mindful of the need to maintain the right of access to redress when citizens are harmed during the delivery of medical services.” Id. at 3. The Select Committee held a series of meetings in Tallahassee, held four hearings outside the capital, and published an 82 page report (not including appendices). Id. It “received testimony from experts in each of the professional areas impacted” and reviewed records from efforts to address 'prior crises. Id. at 4: The Select Committee also reviewed the record of the Governor’s Select Task Force on Health Care Professional Liability Insurance, which produced a “345 page report as well as thirteen volumes of supportive materials.” Id. at 9. The Governor’s Task Force “undertook a *63 comprehensive review of published studies and relevant literature” and held ten meetings at which it received extensive testimony and information. Gov.’s Select Task Force on Healthcare Prof. Liab. Ins., Gov.’s Task Force on Healthcare Prof. Liab. Ins, Rep., at 3, iv (2003).
134 So.3d at 924-25 (Polston, J., dissenting).
The majority just discards and ignores all of the Legislature’s work and fact-finding. But, under our constitutional system, it is the Legislature, not this Court, that is entitled to make laws as a matter of policy based upon the facts it finds. See art. II, § 3, Fla. Const.; art. Ill, § 1, Fla. Const. It is the Legislature’s task to decide whether a medical malpractice crisis exists, whether a medical malpractice crisis has abated, and whether the Florida Statutes should be amended accordingly. For a majority of this Court to decide that a crisis no longer exists, if it ever existed, so it can essentially change a statute and policy it dislikes, improperly interjects the judiciary into a legislative function.
I respectfully dissent.
CANADY and LAWSON, JJ., concur.