803 So.2d 852 (2002)
Walter CARLTON, Appellant,
v.
GERMANY HAMMOCK GROVES, a Florida General Partnership, Danforth K. Richardson and Roy H. Lambert, individually and as general partners of Germany Hammock Groves, Appellees.
No. 4D01-1231.
District Court of Appeal of Florida, Fourth District.
January 2, 2002.
*853 E. Barbara Baris, Joseph L. Mannikko and Brent Baris of Mannikko & Baris, Palm City, for appellant.
George H. Moss of Moss, Henderson, Blanton, Lanier, Kretschmer & Murphy, P.A., Vero Beach, for appellees.
HAZOURI, J.
Plaintiff, Walter Carlton, filed suit for damages resulting from the flooding of his property caused by a berm on defendant's, Germany Hammocks Groves, General Partnership's ("New Hammock Groves") property. The four count complaint seeks damages on the following theories: nuisance (count I), trespass (count II), express easement (count III) and an easement by implication (count IV). The trial court found the statutes of limitations had expired as to each count and granted final summary judgment in favor of New Hammocks Groves. We find the statute of limitations does not bar counts I and II and reverse the order of summary judgment on those counts. However, we agree the statute of limitations bars counts III and IV and affirm the order of summary judgment on those counts.
Carlton owns a 40-acre parcel of land (Carlton Parcel 1) and a 200-acre parcel of land (Carlton Parcel 2). New Hammock Groves owns the parcel of land on the southern border of Carlton Parcel 1 and 2, known as Section 32. This case deals with the flooding and drainage of Carlton Parcel 1 and 2.
Prior to 1980, all of the land at issue in this case was owned by Carlton. In 1980, Carlton conveyed Section 32 along the southern border of Carlton Parcel 1 and 2 to Germany Hammock Groves Company ("Old Hammock Groves"), New Hammock Groves' predecessor in interest. Surface water naturally flowed south from Carlton's Parcels 1 and 2, over the Old Hammock Groves' land, Section 32, and into Germany Canal which is the southern boundary of Section 32.
After the 1980 conveyance, Old Hammock Groves constructed a berm on the northern border of Section 32, which runs along the southern border of Carlton Parcel 1 and 2. At that time, as a gratuitous gesture, Old Hammock Groves installed a culvert into its berm to allow drainage from Carlton Parcel 1 and to ease intermittent flooding on Carlton Parcel 1 and 2.
In 1989, the culvert was crushed by Old Hammock Groves. Since that time, Carlton has been refused the right to drain *854 either Carlton Parcel 1 or 2 into the culvert or over or upon Section 32. The berm along the northern border of Section 32 causes flooding on Carlton Parcels 1 and 2. In 1992, Old Hammock Groves was purchased by New Hammock Groves, which also refused Carlton's right to drain his land onto Section 32.
Carlton took no action against Old Hammock Groves or New Hammock Groves until he filed the instant suit against New Hammock Groves on January 9, 1998. The third amended complaint alleges that the berm on New Hammock Grove's property impounds water and causes severe flooding of Carlton Parcels 1 and 2. The complaint alleges that the berm and resulting flooding constitute a nuisance (count I) and trespass (count II). The complaint also alleges an express easement to drain Carlton Parcel 1 (count III) and an easement by implication to drain Carlton Parcel 2 (count IV). New Hammock Groves filed a motion for summary judgment, as to all counts, on various grounds, including that all claims were barred by the applicable statutes of limitations.
At the hearing on the motion, Carlton's counsel argued that the statutes of limitations had not expired as to any of the claims, because Carlton's property has been continuously flooding since 1989. Carlton's counsel asserted that every wet season since 1989 the land floods, creating a lake.
The trial court found the four-year statute of limitations in section 95.11(3)(p), Florida Statutes (1997) was applicable to the nuisance action (count I) and implied easement action (count III); the four-year statute of limitations in section 95.11(3)(g), Florida Statutes (1997) was applicable to the trespass action (count II); and the five-year statute of limitations in section 95.11(2)(b), Florida Statutes (1997) was applicable to the express easement action (count IV). The trial court determined that the applicable statutes of limitations all expired prior to the time suit was filed in 1998 and granted final summary judgement in favor of New Hammock Groves.
Carlton asserts the flooding of his land is a reoccurring injury that results in reoccurring damages during each wet season. Carlton argues that under the continuing torts doctrine each successive flooding since 1989 gives rise to new causes of action under the nuisance (count I) and trespass (count II) theories, against which the statute of limitations begins to run from the time of each successive injury. New Hammocks Groves argues that the flooding is a permanent injury which occurred four years before suit was filed, thus barring the instant action on the nuisance and trespass theories.
The burden is on New Hammocks Grove to prove there are no genuine issues of material fact, see Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966) (the party moving for summary judgment has the burden of establishing no genuine issues of material facts), and the statute of limitations bars the causes of action, see Town of Miami Springs v. Lawrence, 102 So.2d 143, 146 (Fla.1958); Petroleum Prods. Corp. v. Clark, 248 So.2d 196, 199 (Fla. 4th DCA 1971).
Both an action for nuisance and an action for trespass on real property shall be commenced within four years from the time the cause of action accrues. See §§ 95.031, 95.11(3)(g),(p), Fla. Stat. (1997). The issue is whether the limitations period started running in 1989 when the culvert was crushed for a single cause of action comprising permanent damage (past, present and prospective), so that the cause of action was barred in 1993; or whether each successive flooding after 1989 gave rise to a new cause of action against which the statute of limitations started to run *855 from the time of each successive injury, so that Carlton can recover for the damage resulting from the floodings that occurred in the four years prior to filing suit.
In Lawrence, the Florida Supreme Court explained when the statute of limitations commences to run against damages from overflow of land caused by an artificial construction or obstruction, regardless of whether the theory of liability is trespass or nuisance:
"The determination of the question whether the flooding of land gives rise to a single right or successive rights of action depends ordinarily upon whether the injury or the causative condition is permanent or temporary. The rule prevailing in most jurisdictions is that if the injury is permanent, or if the causative structure or condition is of such a character that injury will inevitably result and the amount of the damage can be determined or estimated, a single action may and should be brought for the entire damages, both past and prospective. But if the overflow is merely temporary, occasional or recurrent, causing no permanent injury to the land, or if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative conditions, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages, it is generally held that each repetition of the overflow gives rise to a new cause of action for which successive actions may be brought."
102 So.2d at 146 (quoting 56 Am.Jur., Waters, § 443, p. 858-59).
In Lawrence, the Town raised the elevation of the street adjoining plaintiffs' property and failed to provide drainage, thereby gathering up the water that collected in a parking area after a rainfall and diverting the water onto and impounding it on plaintiffs' property. 102 So.2d at 146. Plaintiffs first noticed some of the damage resulting from the impounding of water on their property in January of 1953, and suit was filed in December of 1954. Id. at 144. The Town unsuccessfully asserted the one-year statute of limitations as a defense and appealed. Id.
The supreme court explained that the issue was whether the statute of limitations began to run when the cause of action first accrued, presumably in January of 1953, or whether each successive flooding since January of 1953 gave rise to a new cause of action against which the statute of limitations began to run from the time of each successive injury. Id. at 145. The court noted it was alleged that the Town's acts "constitute a continuing wrong against the plaintiffs." Id. at 146. The court also noted that once the plaintiff built a dike, the property was no longer subjected to the overflow demonstrating the overflow was abatable. Id. Additionally, the permanent value of the property was not affected by the recurrent overflow. Id.
The supreme court reasoned that the damages were consistent with the theory of a suit for temporary damages for past injuries rather than a suit for permanent damages (past, present and prospective) based on the difference in the value of the property with and without the flowage. Id. The court concluded that the evidence failed to show, as a matter of law, that the suit had the characteristics of permanency sufficient to require the bringing of a single action for the entire damages, both past and prospective. Id. Accordingly, the court determined the suit was not barred by the statute of limitations because damages were recoverable for each repetition of the overflow occurring within one year of the time suit was filed. Id.
*856 As this court has emphasized, "the period of limitations does not commence to run against a cause of action for permanent damage to realty until the damage is apparent and it becomes obvious such damage is of a permanent character." Petroleum Products, 248 So.2d at 199 (citation omitted).
In this case, New Hammock Groves did not meet its burden of establishing there were no issues of material fact concerning whether a permanent injury occurred four years before suit was filed so as to bar the instant action on the nuisance and trespass theories.
Carlton alleged sufficient facts with regards to the flooding and resulting damage occurring in the four years preceding the date suit was filed so as to urge application of the continuing torts doctrine and preclude summary judgment. See Pearson v. Ford Motor Co., 694 So.2d 61, 68-69 (Fla. 1st DCA 1997) ("Whether the continuing torts doctrine applies to the facts of a case is for a trier of fact to decide."). As Carlton urges, he has alleged an injury similar to that in Lawrence. As in Lawrence, damage to the property was caused by intermittent flooding occurring during rainfall, and the flooding was abatable. In Lawrence, the flooding was abated by a dike. In this case, the flooding did not occur before the culvert was crushed; and thus, a culvert would abate the flooding. Because the injury is allegedly reoccurring and abatable, it is arguably not a permanent injury to the land, but rather a reoccurring injury to the land.
Because there are genuine issues of material fact concerning whether there was a permanent or reoccurring injury to the land, the trial court erred when it granted summary judgment on counts I and II. Accordingly, the order of summary judgment is reversed with respect to counts I and II, and the case is remanded for further proceedings.
The order of summary judgment is affirmed with respect to the causes of action for an implied easement (count III) and an express easement (count IV). A cause of action for an easement accrues when an adverse party prevents use of the easement. Estate of Johnston v. TPE Hotels, Inc., 719 So.2d 22, 26 (Fla. 5th DCA 1998), rev. denied, 727 So.2d 904 (Fla. 1999). The causes of action accrued in 1989 when the culvert was crushed, thereby preventing drainage of Carlton's land and denying his use of the easement. This case was filed on January 9, 1998, beyond the time prescribed by the applicable statutes of limitations. See §§ 95.11(3)(p) and (2)(b), Fla. Stat. (1997). Accordingly, the trial court did not err when it found counts III and IV were barred by the applicable statutes of limitations and granted summary judgment on those counts.
Affirmed in part, reversed in part and remanded.
STONE and GROSS, JJ., concur.