953 So.2d 766 (2007)
James I. PASCO and Betty Pasco, Appellants,
v.
CITY OF OLDSMAR, Florida, a Municipality, Appellee.
Nos. 2D05-5954, 2D06-696.
District Court of Appeal of Florida, Second District.
April 20, 2007.
*767 Patrick B. Calcutt of Calcutt & Calcutt, P.A., St. Petersburg, for Appellants.
James C. Yacavone, III of Frazer, Hubbard, Brandt, Trask & Yacavone, L.L.P., Dunedin, for Appellee.
NORTHCUTT, Judge.
James and Betty Pasco sued the City of Oldsmar, alleging that the City had built a road across their property. The Pascos sought a declaratory judgment confirming their title to the portion of their property lying beneath and near the road, and alternatively they claimed damages for inverse condemnation. The City obtained a summary judgment on the basis of its affirmative defense that the implicated land was presumptively dedicated. The Pascos filed two appeals, which have been consolidated. We dismiss case no. 2D05-5954 without further comment because the orders appealed merely granted the City's motion for summary judgment. See Better Gov't Ass'n of Sarasota County, Inc. v. State, 802 So.2d 414 (Fla. 2d DCA 2001). In case no. 2D06-696, we reverse the final summary judgment because the record does not conclusively demonstrate that there was a presumptive dedication as alleged by the City.
Except where noted, the following facts are taken from Mr. Pasco's deposition and from affidavits by him and his wife. The Pascos have lived on Douglas Road in Oldsmar for over twenty-five years. Over the years, Mr. Pasco worked for the City in different capacities, including as a laborer in the street department and later as an officer, training instructor, and inspector in the fire department.
When the Pascos bought their house, Douglas Road was a narrow, one-lane, shell road that ran along the southern boundary of their property. Around 1983 or 1984, the City decided to pave the road. However, the proposed path of the paved road did not follow the existing shell road. Instead, the proposed paving cut diagonally across the front of the Pascos' property, at one point intruding almost thirty feet onto their property and leaving a small triangle of their property across the road. Mr. Pasco objected to the proposed path, but the director of public works at the time claimed that the City had a thirty-foot easement allowing such use. Mr. Pasco was unaware of any easement. When he continued his objections and asked to see documentation of the City's alleged interest in his land, Mr. Pasco's job was threatened. He was also told that the City would force him to move his house because it was allegedly located within the setback. In the face of these threats, and lacking the means to move his house or support his family without his job, Mr. Pasco ceased his objections. The road was paved as proposed, with the exception that, contrary to the original plan, the road as built *768 comes to a dead end somewhere just west of the Pascos' property.
About twenty years later, Mr. Pasco became interested in putting a front porch on his house. With the road so close, however, he was told that he would have to apply for a variance, which was not guaranteed. During this period he also joined with a neighboring family member to complain about drainage problems on the street. There were drains in the center of the road, but they had become clogged with dirt and debris due to a lack of maintenance.
According to Mr. Pasco, the mayor at the time and a city employee came to inspect the problem, and at this meeting the mayor admitted that the road was on Mr. Pasco's property. Around this same time, Mr. Pasco heard that the City was forced to admit that it owned only a utility easement where the road runs. This apparently occurred in conjunction with the commercial development of a nearby property. The City responded to the drainage complaints by cleaning the drains once, in 2003. Mr. Pasco did not pursue a variance request for his porch. He did, however, obtain a survey showing that the road was located on his property. He complained to the City Council about the presence of the road on his property, but he received no meaningful response.
In December 2004, the Pascos filed the instant suit against the City. In its answer, the City claimed the statutory dedication as one of several affirmative defenses, along with adverse possession, easement by prescription, statute of limitations, and laches. Only the statutory dedication is at issue here, and we express no opinion on the merits of the other defenses.
After suit was filed, the parties conducted discovery. In its response to a request to produce, the City acknowledged that it had no documentsincluding no instruments of dedication or conveyancesupporting the City's right to construct the road on the Pascos' property. The City in turn served a request for admissions calling upon the Pascos to admit that the City had "maintained the portion of Douglas Road that abuts your property for more than four years prior to the date you filed the complaint in this action." In response, the Pascos admitted only that the City "maintained the road since it was constructed."
The City then moved for summary judgment, asking the court to rule that the roadway was presumed to be dedicated to the City under section 95.361(1), Florida Statutes (2004). That statute provides in pertinent part as follows:
(1) When a road, constructed by a county, a municipality, or the Department of Transportation, has been maintained or repaired continuously and uninterruptedly for 4 years by the county, municipality, or the Department of Transportation, jointly or severally, the road shall be deemed to be dedicated to the public to the extent in width that has been actually maintained for the prescribed period, whether or not the road has been formally established as a public highway. The dedication shall vest all right, title, easement, and appurtenances in and to the road in:
(a) The county, if it is a county road;
(b) The municipality, if it is a municipal street or road; or
(c) The state, if it is a road in the State Highway System or State Park Road System,
whether or not there is a record of a conveyance, dedication, or appropriation to the public use.
In support of its motion for summary judgment, the City filed the affidavit of its assistant public works director, who stated *769 that the City had maintained a sign on Douglas Road since 1991. The affidavit further stated that the City had entered into a 1999 contract for the bimonthly sweeping of all City streets and that the assistant public works director had "personal knowledge that the City has performed periodic street sweeping on all City streets, including Douglas Road West," for at least ten years. The City also relied on the Pascos' above-mentioned response to the request for admissions.
In opposition to the motion for summary judgment, the Pascos filed affidavits by James and Betty Pasco, by three of their adult children, and by a neighboring property owner. All of the affidavits averred that the City had never repaired, patched, striped, or edged the road since it was constructed. Mr. Pasco recounted that the City had swept the street only once, in 1999, and had cleaned out the drain in 2003. He further asserted that the only sign on the road was a "Dead End" sign located approximately 200 feet from his property.
After a hearing, the circuit court granted summary judgment for the City because the Pascos had not asked to be relieved from their admission that the City had maintained Douglas Road. The court entered a summary final judgment in the City's favor on the Pascos' claims. The judgment also declared that the portion of the road traversing the Pascos' property was deemed to be dedicated to the public. This was done apparently by stipulation or without objection, for the City had not pleaded a claim for affirmative relief.
"The movant for summary judgment bears the burden of demonstrating conclusively that the nonmoving party cannot prevail. If the record raises even the slightest doubt that an issue might exist, summary judgment is precluded." Fatherly v. Cal. Fed. Bank, FSB, 703 So.2d 1101, 1102 (Fla. 2d DCA 1997). On appeal from a summary judgment, all facts and inferences are viewed in the light most favorable to the nonmoving party. Valk v. J.E.M. Distribs. of Tampa Bay, Inc., 700 So.2d 416, 419 (Fla. 2d DCA 1997).
Section 95.361 creates a presumption that a road is dedicated to the public when it was both constructed by a governmental entity and "maintained or repaired continuously and uninterruptedly for 4 years" by the governmental entity. § 95.361(1) (emphasis added). The statute is strictly construed, Balbier v. City of Deerfield Beach, 408 So.2d 764 (Fla. 4th DCA 1982), and failure to meet all of the statutory elements defeats a dedication under the statute, Hancock v. Tipton, 732 So.2d 369, 372 (Fla. 2d DCA 1999).
The roadway must, in the first instance, have been constructed, in the sense of built or made, by the public entity so that at a definite point in time it can be said that construction of a road has occurred. The road must be continuously and uninterruptedly maintained or repaired for four years. The statutory requirements are designed to put the legal title holder on notice both as to the commencement of the four-year period (construction) and as to the continued assertion of the adverse claim for four years (repair and maintenance).
St. Joe Paper Co. v. St. Johns County, 383 So.2d 915, 917 (Fla. 5th DCA 1980).
There was no dispute that the City constructed the road. To establish the absence of disputed facts for the remainder of its case, the City relied heavily on the Pascos' admission that the City maintained the road since its construction. But this fell far shy of establishing the statutory requirements for a presumption of dedication. Section 95.361(1) requires more than occasional, or even periodic, *770 maintenance or repair; it requires continuous and uninterrupted maintenance or repair. See Cont'l Ins. Co. v. Belflower, 355 So.2d 840, 840 (Fla. 1st DCA 1978) (reversing conclusion that road was dedicated to county under section 95.361 when "there was an entire absence of evidence that even these desultory activities [of cutting the road and twice causing shell to be placed on portions] occurred within four years, or that the county performed any inspection or repair `continuously and uninterruptedly for four years' on what otherwise must be regarded as a private road").
In their response to the request for admissions, the Pascos acknowledged that the City had maintained the road since its construction. But they did not admit indeed, the City's own request for admissions did not assertthat the road had been maintained continuously and uninterruptedly. In fact, the Pascos and their neighbors specifically denied that this had been done. They described with particularity the City's very few acts of maintenance or repair over the years. Thus, there are genuine issues of disputed fact regarding whether the City had maintained the road "continuously and uninterruptedly." Therefore, the City was not entitled to judgment as a matter of law. See Holl v. Talcott, 191 So.2d 40 (Fla. 1966). Accordingly, we reverse.
Final summary judgment reversed and remanded for further proceedings.
WHATLEY and SILBERMAN, JJ., Concur.