987 So.2d 681 (2008)
Josephine C. SUAREZ and The Suarez Family Trust, through its trustee, Evis Farmer, Appellants,
v.
CITY OF TAMPA, a municipal corporation of the State of Florida, Appellee.
No. 2D05-3869.
District Court of Appeal of Florida, Second District.
February 1, 2008.
*682 Dominick J. Graziano of Bush Graziano & Rice, P.A., Tampa, for Appellants.
David L. Smith, City Attorney, and Jerry M. Gewirtz, Chief Assistant City Attorney, Tampa, for Appellee.
CANADY, Judge.
This case relates to garbage that was dumped by the City of Tampa on private property in 1965 and 1966. In 2002, the appellants, Josephine C. Suarez and the Suarez Family Trust, the equitable and legal owners of the property where the garbage was dumped, brought suit against the City asserting claims for (a) inverse condemnation, (b) continuing trespass, and (c) declaratory relief as to a statutory cause of action under section 376.313(3), Florida Statutes (2002). The circuit court entered final summary judgment in favor of the City on the ground that all the claims were barred by the statute of limitations. For the reasons we explain, we affirm the judgment in favor of the City.

I. Standard of Review

Summary final judgments are subject to de novo review. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). "When reviewing a summary judgment, we must view the facts in the light most favorable to the nonmoving party." Garden St. Iron & Metal, Inc. v. Tanner, 789 So.2d 1148, 1149 *683 (Fla. 2d DCA 2001). "[R]easonable inferences should be resolved against the movant." Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842, 853 (Fla.2003). A summary judgment should be affirmed only if the moving party has met the burden of conclusively proving the nonexistence of "genuine triable issues." Holl v. Talcott, 191 So.2d 40, 43 (Fla.1966).

II. Background

The record shows without dispute that the City began dumping municipal waste on the appellants' property in 1965 and ceased dumping in 1966. Whether express permission was given to the City to use the property as a dumping site and whether the City promised to restore the property to usable condition are matters in dispute.
The record shows that attempts to sell the land in the 1980's were unsuccessful because prospective purchasers were concerned about the garbage located on the land. Specifically, the record contains undisputed evidence that in 1988, a lawyer for the property owners sent the City a letter which stated:
During the past several months, my clients attempted to sell that property and were unable to do so as a result of a preliminary engineering report which found that there was potential site contamination.
Due to the past dumping history of the City of Tampa on this property, my clients would assert that the City should participate with them in resolving the contamination problem. . . .
The record also shows that in March 1996, the City sent a letter to appellant Josephine Suarez, through her real estate agent, reciting that Mrs. Suarez and her agent had "advised the City" of their "difficulty selling the property because of the presence of landfill material" and had "asked whether the City would be willing to purchase the property or otherwise compensate" Mrs. Suarez. The letter went on to state that there was no "obligation on the part of the City to provide" Mrs. Suarez "with the relief" she sought.
It is also undisputed that in August 1996, appellant Josephine Suarez filed a voluntary petition for bankruptcy in the United States Bankruptcy Court listing a contingent and unliquidated claim "against Hillsborough County and/or City of Tampa for inverse condemnation." A similar claim was listed in a filing made by appellant Josephine Suarez in the bankruptcy proceeding in November 1997. It is undisputed that the inverse condemnation claim referred to in the bankruptcy filings related to the garbage dumped on the property at issue in this case.
Evidence was adduced by the appellants to establish that on March 9, 1998, a request was made on behalf of Mrs. Suarez that the City remove the garbage from the property. The record also shows that by a letter dated March 10, 1998, to counsel for Mrs. Suarez, the City acknowledged that the property "was used as a landfill during the years 1965 through 1966." The letter goes on to state that "in cooperation with the Florida Department of Environmental Protection (DEP)[,] the City has undertaken an investigation of the site in accordance with the Landfill Investigation Program developed by the City and DEP." The letter further states: "Should DEP[ ] or [the Hillsborough County Environmental Protection Commission] [ ] or any other governmental entity require remediation of contamination caused by the presence of the closed landfill, the City would undertake those actions."
The appellants' suit against the City was not filed until March 8, 2002.
After the appellants filed suit, extensive discovery was conducted and the City moved for summary judgment. In its motion, *684 the City asserted that "each of Plaintiffs' claims are barred by the statute of limitations insofar as the applicable statute of limitations on each of Plaintiffs' claims is four years and the within action was not filed until March[] 2002, substantially more than four years after Plaintiffs' alleged causes of action accrued." (Emphasis omitted.) The City also asserted other grounds for entry of summary judgment. The trial court's order granting final summary judgment states that "[t]he undisputed material facts establish that Plaintiffs failed to file this action within the four-year limitation period for" each of the three claims asserted by the appellants.

III. Analysis

A. The Inverse Condemnation Claim

The parties agree that the inverse condemnation claim is subject to the residual four-year statute of limitations applicable to actions that are "not specifically provided for" in the statute. § 95.11(3)(p), Fla. Stat. (2002). The parties also acknowledge that "the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues," § 95.031, and that "[a] cause of action accrues when the last element constituting the cause of action occurs," § 95.031(1).
The appellants contend, however, that summary judgment on the inverse condemnation claim was unwarranted because "there exists a dispute of material fact as to when the date of taking occurred." The appellants argue that the date the inverse condemnation cause accrued is a disputed fact because "the City never argued for a specific date of taking" and the trial court did not find such a date of taking. The appellants further argue that it was not until March 9, 1998, that the City was requested to remove the garbage from the property and that the "March 1998 letter was the first and only time the City told the Appellants it would not remove the garbage unless legally ordered to do so." In support of their position, the appellants rely on the stabilization doctrine articulated by the Supreme Court in United States v. Dickinson, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947).
Actions for inverse condemnation commonly involve "situations where a continuing trespass or nuisance ripens into a constitutional taking of property." State, Dep't of Health & Rehabilitative Servs. v. Scott, 418 So.2d 1032, 1034 (Fla. 2d DCA 1982). Viewing the facts in the light most favorable to the appellants, it is manifest that to the extent the City was liable for placing or allowing the garbage to remain on the propertya cause of action for inverse condemnation ripened more than four years prior to the filing of the lawsuit against the City in 2002.
The appellants' cause of action for inverse condemnation could have accrued no later than 1988 when the owners of the land asserted that the City should participate in resolving "the contamination problem" on the land. The inescapable inference from this assertion is that the landowners had become aware of the harm caused to their property by the dumping. The March 1996 letter from the City to Mrs. Suarez constitutes further undisputed evidence of the knowledge of harm. Given the filings made in the bankruptcy proceedings, it is clear beyond any doubt that the landowners were specifically aware of the existence of an inverse condemnation claim in 1996 and 1997. Such knowledge of harm arising from governmental action ordinarily is sufficient to trigger accrual of a cause of action for inverse condemnation. See Sarasota Welfare Home, Inc. v. City of Sarasota, 666 So.2d 171 (Fla. 2d DCA 1995); Hillsborough County Aviation *685 Auth. v. Benitez, 200 So.2d 194 (Fla. 2d DCA 1967); Szapor v. City of Cape Canaveral, 775 So.2d 1016 (Fla. 5th DCA 2001).
The appellants' reliance on Dickinson is misplaced. In Dickinson, 331 U.S. at 749, 67 S.Ct. 1382 the Supreme Court held that "when the Government chooses not to condemn land but to bring about a taking by a continuing process of physical events, the owner is not required to resort either to piecemeal or to premature litigation to ascertain the just compensation for what is really `taken.'" Under Dickinson, the property owner whose lands were subjected to progressive inundation arising from the construction of a dam and the raising of the water level in a river "by successive stages," id. at 746, 67 S.Ct. 1382 was allowed to "postpon[e] suit until the situation be[came] stabilized" and "the consequences of inundation [had] so manifested themselves that a final account [could] be struck," id. at 749, 67 S.Ct. 1382.
In the instant case, it is undeniable that the situation on the appellants' property became stabilized in 1966 when the City ceased dumping. Since then, the City has not undertaken "a continuing process of physical events." 331 U.S. at 749, 67 S.Ct. 1382. The fact that the harmful effects of the dumpingthrough seepage of contaminants from the garbage to the landmay increase over time does not mean that the consequences of the dumping had not "so manifested themselves" that it was impossible to strike a "final account" more than four years before the appellants filed suit. Id.; see Boling v. United States, 220 F.3d 1365, 1371 (Fed.Cir.2000) ("The contention that Dickinson stands for the proposition that the filing of a lawsuit can be postponed until the full extent of the damage is known has been soundly rejected. Properly understood, stabilization as discussed in Dickinson is not deferred until the progressive environmental damage stops, but occurs when the environmental forces have substantially and permanently invaded the private property such that the permanent nature of the taking is evident and the extent of the damage is reasonably foreseeable." (citations omitted)).

B. The Continuing Trespass Claim

"An action for trespass on real property" is subject to a four-year limitations period. § 95.11(3)(g). As with the inverse condemnation claim, the question at issue with respect to the trespass claim is when the cause of action accrued.
The appellants contend that "the City's failure to remove the waste after the Appellants withdrew consent constitutes a continuing tort for trespass" and that "the statute of limitations does not bar recovery until four years after the continuing trespass ceases." The appellants also argue that it is undisputed that they "withdrew any consent on March 9, 1998, less than four years before any complaint was filed."
"The continuing torts doctrine is recognized under our state law." Halkey-Roberts Corp. v. Mackal, 641 So.2d 445, 447 (Fla. 2d DCA 1994). Where the doctrine applies, a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit. See Seaboard Air Line R.R. Co. v. Holt, 92 So.2d 169 (Fla.1957); Kulpinski v. City of Tarpon Springs, 473 So.2d 813 (Fla. 2d DCA 1985). A trespass may constitute a continuing tort. See Carlton v. Germany Hammock Groves, 803 So.2d 852 (Fla. 4th DCA 2002).
Here, however, there was no continuing tort of trespass. Viewing the facts in the light most favorable to the appellants, the cause of action for trespass accrued no later than 1988 when the City was informed about the concerns of the property owners regarding the contamination of the *686 property. At that point, the owners manifested their unwillingness to accept the status quo on the property. As with the inverse condemnation claim, the listing of the claim against the City in the 1996 and 1997 bankruptcy filings and the undisputed evidence of knowledge of harm in the March 1996 letter give the lie to the appellants' assertion that the trespass cause of action did not accrue until March 9, 1998.
The circumstances here are similar to those at issue in Tanner, 789 So.2d 1148, where we held the retraction of permission to use property for a particular purpose triggered the accrual of a cause of action for trespass. In Tanner, the purchaser of a scrap metal business had allowed the prior owner to leave a number of used tires on the property. The court stated that "[o]ne can commit a trespass to real property by leaving something on another's land after the landowner has withdrawn his consent to its presence." Id. at 1150. We held that in such a scenario, "the landowner's cause of action for trespass accrues, and the statute of limitations period begins, when he retracts his permission for the use of the property." Id. The continuing presence of the unwanted tires was not treated as a continuing tort.
A continuing tort is "established by continual tortious acts, not by continual harmful effects from an original, completed act." Horvath v. Delida, 213 Mich.App. 620, 540 N.W.2d 760, 763 (1995). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." In re Medical Review Panel for Claim of Moses, 788 So.2d 1173, 1183 (La.2001); see also Fed. Deposit Ins. Corp. v. Laidlaw Transit, Inc., 21 P.3d 344, 356 (Alaska 2001) (stating that where the defendants were "not exacerbating the contamination that they allegedly caused," a continuing trespass claim was inappropriate because "the contamination in this case [does not] differ[] from the harm ordinarily at issue in cases involving torts of a non-continuing [sic] nature, where discrete wrongful acts often have lasting consequences").

C. The Statutory Claim

The appellants argue that the trial court erred in granting the City's motion for summary judgment as to this claim because section 376.313(3) provides a private right of action for clean-up costs. See Aramark Uniform & Career Apparel, Inc. v. Easton, 894 So.2d 20 (Fla.2004). This issue, however, was not the basis for the trial court's ruling. In their initial brief, the appellants do not in any manner challenge the trial court's unequivocal ruling that the claim asserted under section 376.313(3) was barred by the statute of limitations. Since the appellants failed to present any argument in their initial brief that the trial court erred in determining that this claim was barred by the statute of limitations, the trial court's ruling on this claim must be affirmed. See City of Bartow v. Brewer, 896 So.2d 931 (Fla. 1st DCA 2005); Ramos v. Philip Morris Cos., 743 So.2d 24 (Fla. 3d DCA 1999).

IV. Conclusion

The appellants have failed to show that the trial court erred in granting summary judgment. The final summary judgment in favor of the City is therefore affirmed.
ALTENBERND and SALCINES, JJ., Concur.