VILLANTI, Judge.
Sylvia and James Woodward appeal the final summary judgment entered in favor of David Olson, M.D., and Intercoastal Medical Group in this medical malpractice action.[1] The trial court granted the mo *542 tion based on its conclusion that the Wood-wards’ claims were barred by the medical malpractice statute of repose found in section 95.11(4)(b), Florida Statutes (2009). Because the statute of repose properly bars only some of the Woodwards’ claims, we affirm in part and reverse in part.
The facts in the record before this court show that Sylvia Woodward was a pack-a-day smoker with a family history of various cancers when she became a patient of Dr. Olson in 1989. On September 6, 2002, Mrs. Woodward fell from her roof, and she went to the emergency room for treatment. In the emergency room, a chest X-ray was taken as part of the standard work-up. According to the radiologist’s report, Mrs. Woodward’s chest X-ray showed an “area of increased density” in the right lung, and the radiologist recommended further follow-up for this issue. Dr. Olson received the radiologist’s report, but he did not mention the report to Mrs. Woodward or order the recommended follow-up testing during Mrs. Woodward’s visits on September 17, 2002, and October 25, 2002.[2]
Mrs. Woodward saw Dr. Olson intermittently over the next three years. Then on August 1, 2005, Mrs. Woodward was again seen in the emergency room, this time due to abdominal complaints. A chest X-ray was taken as part of the regular emergency room work-up. The radiologist compared the 2005 X-ray to the 2002 X-ray and recommended that Mrs. Woodward have a follow-up CT scan of the chest, and specifically of the right lung. Dr. Olson did not mention the radiologist’s report or order the recommended scan when Mrs. Woodward saw him as follow-up to the emergency room visit on October 10, 2005.
Mrs. Woodward next visited Dr. Olson on January 15, 2008, when she had a “Welcome to Medicare” physical. Dr. Olson ordered a chest X-ray as part of this “welcome package.” The radiologist’s report of this X-ray identified infiltrate in Mrs. Woodward’s right lung and recommended “radiographic follow-up.” While Dr. Olson received the radiologist’s report, he nevertheless did not mention the report’s findings to Mrs. Woodward or order the recommended follow-up testing despite further visits by Mrs. Woodward in May, October, and December of 2008.
After Dr. Olson retired from medical practice, Mrs. Woodward saw a different physician at Intercoastal on July 6, 2009. This new physician immediately told Mrs. Woodward of the earlier findings concerning her right lung and immediately ordered follow-up testing. Mrs. Woodward was subsequently diagnosed with stage IV lung cancer, and she underwent surgery, radiation, and chemotherapy.
On June 30, 2010, the Woodwards served Dr. Olson and Intercoastal with a *543 notice of intent to initiate a medical malpractice action, and the Woodwards subsequently filed a medical malpractice action against Dr. Olson, Intercoastal, and various other defendants involved in Mrs. Woodward’s care and treatment. In the Woodwards’ complaint, they alleged that Dr. Olson’s treatment of Mrs. Woodward fell below the standard of care when he failed to advise her of the need for followup care and failed to order the recommended follow-up tests. Specifically, the complaint alleged that Dr. Olson was negligent “[c]ommencing with the office visit of September 17, 2002, and on each office visit with Dr. Olson thereafter.”
In response to the Woodwards’ complaint, Dr. Olson and Intercoastal raised the affirmative defense of the statute of repose. That statute provides, in pertinent part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than ⅛ years from the date of the incident or occurrence out of which the cause of action accrued ....
§ 95.11(4)(b) (emphasis added). Dr. Olson and Intercoastal argued that the four-year statute of repose began to run on September 17, 2002, when Dr. Olson failed to tell Mrs. Woodward about the findings in the X-ray report from the emergency room and that it continued to run from that date forward. They argued that the repose period did not “re-start” when the new X-rays were taken and the new reports were received by Dr. Olson in August 2005 and January 2008 because his failures relating to those reports were simply a continuation of his original allegedly negligent treatment in 2002. The trial court agreed with Dr. Olson and Intercoastal, and it granted summary judgment in favor of them on this basis. The Woodwards appeal this ruling, and, under the facts of this case, we agree with them that the trial court’s ruling was erroneous, but only in part.
Unlike a statute of limitations, which begins to run when the cause of action accrues, “a statute of repose, which is usually longer in length, runs from the date of a discrete act on the part of the defendant without regard to when the cause of action accrued.” Kush v. Lloyd, 616 So.2d 415, 418 (Fla.1992). Thus, in a medical malpractice case, it is the discrete incident of malpractice that triggers the running of the statute of repose. Id. at 419 (quoting Carr v. Broward Cnty., 505 So.2d 568, 574-75 (Fla. 4th DCA 1987)). Hence, resolution of this appeal hinges on whether Dr. Olson committed one or more discrete incidents of malpractice and when those incidents occurred.
Here, taking the evidence in the light most favorable to the Woodwards, the record shows that Dr. Olson committed one discrete incident of malpractice on September 17, 2002, when he failed to advise Mrs. Woodward of the “focal density” in her right lung identified on the September 6, 2002, X-ray and failed to order the follow-up testing recommended by the radiologist based on that X-ray. Dr. Olson then committed a second discrete incident of malpractice on October 10, 2005, when he failed to advise Mrs. Woodward of the findings from her August 1, 2005, chest X-ray and when he failed to order the follow-up testing recommended by the radiologist based on that X-ray. And he also committed a third discrete incident of malpractice in January 2008 when he failed to advise Mrs. Woodward of the “infiltrate” in her right lung identified *544 on the January 15, 2008, chest X-ray and failed to order the radiographic follow-up recommended by the radiologist based on that X-ray. Because these constituted three discrete acts of malpractice by Dr. Olson, each act was subject to its own four-year statute of repose. Hence, the Wood-wards’ claims arising out of the 2002 act of malpractice were barred by the statute of repose as of October 25, 2006.[3] Their claims arising out of the 2005 act of malpractice were likewise barred by the statute of repose as of October 10, 2009. Because the Woodwards did not serve their notice of intent to initiate a medical malpractice action until June 30, 2010, after the respective statutes of repose had expired, their claims arising out of these first two acts of malpractice are barred by the four-year statute of repose. Thus, the trial court properly granted summary judgment in favor of Dr. Olson and Intercoas-tal to the extent that the Woodwards sought damages arising out of the 2002 and 2005 discrete incidents of malpractice.
To avoid this result, the Wood-wards argue that the trial court should have applied the continuing tort doctrine to Dr. Olson’s actions which would result in the statute of repose not beginning to run until after Mrs. Woodward’s final visit with Dr. Olson in 2008. But we reject this argument for two reasons.
First and foremost, the continuing tort doctrine is inapplicable in this case because it applies to statutes of limitations, not statutes of repose. Under the continuing tort doctrine, the statute of limitations begins to run “from the date the tortious conduct ceases,” Halkey-Roberts Corp. v. Mackal, 641 So.2d 445, 447 (Fla. 2d DCA 1994), and the plaintiff may recover based on all of the tortious acts committed within the limitations period prior to the filing of the action, see Suarez v. City of Tampa, 987 So.2d 681, 685 (Fla. 2d DCA 2008). The parties do not dispute that no Florida court has ever applied the continuing tort doctrine to statutes of repose or to medical malpractice cases, see, e.g., Aristide v. Jackson Mem’l Hosp., 917 So.2d 258, 255 (Fla. 3d DCA 2005), and the Woodwards present no compelling reason for this court to make new law on this issue.
Second, even if the continuing tort doctrine could somehow be properly applied to statutes of repose in medical malpractice actions, it would not resuscitate the Woodwards’ claims arising out of the 2002 and 2005 acts of malpractice. This court has explained that “ ‘[w]hen a defendant’s damage-causing act is completed, the existence of continuing damages to the plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort.’ ” Suarez, 987 So.2d at 686 (emphasis added) (quoting In re Med. Review Panel for Claim of Moses, 788 So.2d 1173, 1183 (La.2001)). Here, the relevant alleged damage-causing acts were Dr. Olson’s failures to advise Mrs. Woodward of the results of the 2002 and 2005 X-rays at her appointments relating to those X-rays. Even assuming that Mrs. Woodward had continuing and progressively worsening damages from these two negligent acts, that fact would not trigger the continuing torts doctrine because the damage-causing acts were already completed. Thus, even if applicable, the continuing torts doctrine does not save the Woodwards’ claims aris *545 ing out of the 2002 and 2005 incidents of malpractice.
Alternatively, the Woodwards argue that the statute of repose should run from the date of Mrs. Woodward’s last treatment by Dr. Olson — not the date of his negligent acts. However, the cases they rely on for this position do not require the result they seek. For example, in Cates v. Graham, 427 So.2d 290, 291 (Fla. 3d DCA 1983), the appellate court noted that the doctor performed surgery on the plaintiff to remove glass from his foot on June 21, June 24, and July 4, 1975. The plaintiff discovered in February 1979 that some glass had been left in his foot. For purposes of determining when the statute of repose began to run, the supreme court noted that the plaintiffs “last treatment occurred on July 4, 1975.” Cates v. Graham, 451 So.2d 475, 476 (Fla.1984). Similarly, in University of Miami v. Bogorff, 583 So.2d 1000 (Fla.1991), the plaintiff had been given chemotherapy injections between July 1971 and January 1972. The supreme court stated that the statute of repose in that case expired “in January 1976 — four years after the incident of malpractice.” Id. at 1003.
The Woodwards use these two cases to argue that the statute of repose should begin to run from the date of Mrs. Woodward’s last visit with Dr. Olson in 2008, essentially equating her last visit with him with her last treatment. However, this reading expands Cates and Bogorff beyond their facts. In both of those cases, the plaintiffs were following a specific course of treatment for a specific condition, and the course of treatment had a definite starting and ending date. Logic would dictate that, as those cases held, the statute of repose would start at the conclusion of the specific course of treatment.
Here, however, Mrs. Woodward’s various visits with Dr. Olson were clearly not part of a specific course of treatment. To the extent that the 2002 X-ray was part of a specific course of treatment for the injuries Mrs. Woodward sustained in her fall from the roof, that course of treatment ended on October 25, 2002. Similarly, to the extent that the 2005 X-ray was part of a specific course of treatment for Mrs. Woodward’s abdominal pain, that course of treatment ended on October 10, 2005. Neither Cates nor Bogorjf stands for the proposition that a long-term patient may hold the statute of repose in perpetual abeyance by continuing to see the same physician over a number of years for a variety of medical needs. Hence, neither of the Woodwards’ arguments for delaying the start of the statute of repose is persuasive, and we conclude that the trial court properly granted summary judgment in favor of Dr. Olson and Intercoastal as applied to Dr. Olson’s discrete incidents of malpractice in 2002 and 2005.
As to Dr. Olson’s discrete incident of malpractice in 2008, however, we reach a different result. Dr. Olson’s discrete incident of malpractice relating to the January 15, 2008, X-ray occurred on or shortly after that date when he failed to advise Mrs. Woodward of the results of the X-ray and failed to order the recommended follow-up care. The Woodwards filed their notice of intent to sue in June 2010, well within the four-year repose period based on the January 2008 incident of malpractice. We reject Dr. Olson’s argument that his failures arising from the January 15, 2008, X-ray and radiologist’s report were a continuation of his original September 2002 negligence. Instead, as discussed above, Dr. Olson’s actions in January 2008 constituted a discrete incident of malpractice that triggered the start of a new repose period. Thus, to the extent that the trial court granted summary judgment as to the Woodwards’ claims arising from Dr. Olson’s alleged negligence in January 2008 *546 based on the expiration of the statute of repose, the trial court erred, and we must therefore reverse the summary judgment as to those claims.
In sum, we affirm the summary judgment to the extent that it found that the Woodwards’ claims arising from the 2002 and 2005 discrete incidents of malpractice were barred by the statute of repose. However, we reverse the summary judgment to the extent that it found that the Woodwards’ claims arising from the 2008 discrete incident of malpractice were likewise barred, and we remand for further proceedings on those claims.
Affirmed in part, reversed in part, and remanded for further proceedings.
ALTENBERND and WALLACE, JJ., Concur.

. The remaining appellees were not involved in the final summary judgment and have not appeared in this appeal. However, from *542 what we can tell from the record in this case, they remain defendants in the trial court.

. We recognize that there is disputed evidence concerning whether Dr. Olson told Mrs. Woodward of the recommendation for further testing and whether he offered to order further testing. However, this dispute is irrelevant to the issue raised in Dr. Olson and Intercoastal’s motion for summary judgment, which was solely whether the Woodwards' claims were barred by the statute of repose. Further, we note that we are construing the facts of this case in the light most favorable to the Woodwards, as we are required to do on an appeal from a final summary judgment. See, e.g., Pasco v. City of Oldsmar, 953 So.2d 766, 769 (Fla. 2d DCA 2007) ("On appeal from a summary judgment, all facts and inferences are viewed in the light most favorable to the nonmoving party.” (citing Valle v. J.E.M. Distribs. of Tampa Bay, Inc., 700 So.2d 416, 419 (Fla. 2d DCA 1997))). Thus, nothing in this opinion should be construed as a finding or belief by this court that Dr. Olson and/or Intercoastal did or did not act negligently or commit malpractice.

. The record shows that Mrs. Woodward saw Dr. Olson in follow-up for her fall from the roof on September 17, 2002, and October 25, 2002. Taking the evidence in the light most favorable to the Woodwards requires us to use the later visit for this fall to start the statute of repose.