NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SANDRA SANTIAGO and NORMA )
CACERES, as personal representatives )
of the Estate of Ramona Reyes, )
deceased, )
                             )
           Appellants, )
                             )
v. )               Case No. 2D18-3114
                             )
FRANCISCO A. RODRIGUEZ, M.D., )
                             )
           Appellee. )
_____ )

Opinion filed October 18, 2019.

Appeal from the Circuit Court for Lee
County; John E. Duryea, Jr., Judge.

John N. Bogdanoff, B.C.S. of The
Carlyle Appellate Law Firm, Orlando,
and William Powell of Powell, Jackman,
Stevens & Ricciardi, P.A., Cape Coral,
for Appellants.

Isaac R. Ruiz-Carus and Katherine A.
Gannon of Rissman, Barrett, Hurt,
Donahue, McLain & Mangan, P.A.,
Tampa, for Appellee.


NORTHCUTT, Judge.

          Sandra Santiago and Norma Caceres, personal representatives of the

Estate of Ramona Reyes, appeal the dismissal of their medical malpractice suit against

Dr. Francisco Rodriguez. We affirm the dismissal based on the supreme court's holding in Mizrahi v. North Miami Medical Center, Ltd., 761 So. 2d 1040 (Fla. 2000), but we certify a question of great public importance regarding the present efficacy of that decision.

Santiago and Caceres are the adult surviving children of Ramona Reyes. They filed a two-count complaint against Rodriguez in which they alleged that Reyes's death was caused by Rodriguez's medical negligence and sought a declaration regarding the constitutionality of section 768.21(8), Florida Statutes (2017). That statute excludes medical malpractice cases from those in which adult surviving children have a statutory right to recover noneconomic damages for the wrongful death of a parent. Rodriguez moved to dismiss the complaint on two grounds: that the four-year statute of repose applicable to medical malpractice actions under section 95.11(4)(b), Florida Statutes (2017), had expired and that the action was barred by section 768.21(8). Following a hearing, the circuit court granted the motion and dismissed both counts with prejudice.

The circuit court did not set forth its reasons for the dismissal, but we note that Rodriguez's motion to dismiss based on the statute of repose was not well taken. Statutes of repose, like statutes of limitations, are affirmative defenses. See Hess v. Philip Morris USA, Inc., 175 So. 3d 687, 695 (Fla. 2015). As such, typically they are raised in the answers filed by defendants, who have the burden to prove them. See id. at 695–96; Doe v. Hillsborough Cty. Hosp. Auth., 816 So. 2d 262, 264 (Fla. 2d DCA 2002). As with other affirmative defenses, a court may grant a motion to dismiss on statute of limitations grounds only when the complaint on its face conclusively shows

that the action is barred.  Hummer v. Adams Homes of Nw. Fla., Inc., 198 So. 3d 750, 752 (Fla. 2d DCA 2016); cf. Paylan v. Dirks, 228 So. 3d 679, 680 (Fla. 2d DCA 2017) (reversing dismissal on sovereign immunity grounds when the complaint did not conclusively show that the defendant was entitled to immunity).  That was not the case here.

Section 95.11(4)(b) provides that a medical malpractice action must be commenced within two years after the incident giving rise to the action or within two years after the incident is discovered or should have been discovered with the exercise of due diligence.  "[H]owever, in no event shall the action be commenced later than 4 years from the date of the incident or occurrence out of which the cause of action accrued. . . ."  Id.  Santiago and Caceres filed their suit in August 2017, alleging that Rodriguez was Ramona Reyes's physician until sometime in 2015 and that he had ordered CT scans of her lungs in 2009 and 2013.  They attached as exhibits to the complaint the radiologist reports reflecting, among other things, the dates on which the CT scans were performed.  Santiago and Caceres asserted that Rodriguez committed malpractice by failing to inform Reyes that the scans disclosed the possibility of a lesion in her lung, by failing to order serial CT scans following either scan, by failing to order a biopsy following the 2013 scan, and by failing to diagnose Reyes's lung cancer.  The complaint alleged that the lesion in Reyes's lung became metastatic lung cancer, which caused her January 2017 death.

This court considered materially similar circumstances in Woodward v. Olson, 107 So. 3d 540 (Fla. 2d DCA 2013).  In that case, the court held that the defendant physician's alleged failures in 2002, 2005, and 2008 to inform his patient of

- 3 -

the suspicious findings in her chest X-rays or to order follow-up testing recommended by the radiologists were discrete incidents of alleged malpractice, each of which was subject to its own four-year statute of repose with respect to the patient's suit for medical malpractice arising from her subsequent lung cancer diagnosis. Id. at 543. Notably, the court identified the discrete incident that commenced each repose period as the physician's failure to inform the patient of the X-ray results or order follow-up testing on the date that he saw her after receiving each radiology report. Id. at 543–44. In the case before us, the complaint and attachments reflect only the dates on which the CT scans were performed. They do not disclose when the alleged incidents of malpractice, i.e., the failures to inform Reyes of the scan results or to order follow-up tests, took place. As such, the face of the complaint did not conclusively show that the action was barred under the statute of repose and dismissal on that ground was not supported.

Vis-a-vis the other issue in this case, Santiago and Caceres maintain that the class limitation created by section 768.21(8) violates the equal protection guarantees of the Florida and United States constitutions. See amend. XIV, § 1, U.S. Const.; art. I, § 2, Fla. Const. In Mizrahi, the supreme court upheld the statute in the face of that very argument: "[T]he instant statute which created a right of action for many while excluding a specific class from such action, and which exclusion is rationally related to controlling healthcare costs and accessibility, does not violate the equal protection guarantees of either the United States or Florida Constitutions." 761 So. 2d at 1043. The court concluded that section 768.21(8)'s limitation on who can recover noneconomic damages bore a rational relationship to a legitimate state interest in

limiting increases in medical insurance costs, which the legislature found was a consequence of an ongoing medical malpractice crisis. Id. at 1042–43; see also Univ. of Miami v. Echarte, 618 So. 2d 189, 196–97 (Fla. 1993) (holding that the State has a legitimate interest in controlling medical malpractice insurance costs). Given Mizrahi's express determination of the issue presented in this case, we are obliged to affirm the dismissal.

However, Santiago and Caceres argue that the Mizrahi holding is no longer tenable in light of subsequent supreme court decisions concluding that the medical malpractice crisis upon which the statute's validity depended no longer exists. First, in a plurality opinion in Estate of McCall v. United States, 134 So. 3d 894 (Fla. 2014), the court analyzed the constitutionality of a statutory cap on noneconomic damages in cases of wrongful death resulting from medical malpractice. The plurality examined whether Florida continued to suffer a medical malpractice crisis and concluded that evidence of such a crisis was lacking:

> Based upon these statements and reports, although medical malpractice premiums in Florida were undoubtably high in 2003, we conclude the Legislature's determination that "the increase in medical malpractice liability insurance rates is forcing physicians to practice medicine without professional liability insurance, to leave Florida, to not perform high-risk procedures, or to retire early from the practice of medicine" is unsupported. Ch. 2003-416, § 1, Laws of Fla., at 4035. Thus, the finding by the Legislature and the Task Force that Florida was in the midst of a bona fide medical malpractice crisis, threatening the access of Floridians to health care, is dubious and questionable at the very best.
>
> . . . .

> [E]ven if there had been a medical malpractice crisis in Florida at the turn of the century, <u>the current data reflects that it has subsided</u>.

<u>Id.</u> at 909–14 (emphasis added). <u>But see</u> <u>id.</u> at 921 (Pariente, J., concurring in result) (agreeing with the plurality's conclusion but disagreeing with its process of independently reviewing the existence of a medical malpractice crisis: "[O]ur precedent does not allow this Court to engage in the type of expansive review of the Legislature's factual and policy findings that the plurality engages in when undertaking a constitutional rational basis analysis."); <u>id.</u> at 931 (Polston, C.J., dissenting) (criticizing the plurality's failure to give proper deference to the legislature's findings regarding the existence of a medical malpractice crisis).

Santiago and Caceres also point to the supreme court's decision in <u>North Broward Hospital District v. Kalitan</u>, 219 So. 3d 49 (Fla. 2017). There, the court addressed a statutory cap on noneconomic damages for injuries caused by medical malpractice. The <u>Kalitan</u> majority quoted and reiterated <u>McCall</u>'s conclusions and likewise held that the cap on noneconomic damages arbitrarily limited damages without a rational relationship to the State's purported interest in alleviating an alleged medical malpractice crisis. The court concluded that "there is no evidence of a continuing medical malpractice insurance crisis justifying the arbitrary and invidious discrimination between medical malpractice victims." <u>Id.</u> at 59.

Santiago and Caceres contend these later declarations that there is no evidence of an ongoing medical malpractice crisis must undermine <u>Mizrahi</u>'s decision to uphold section 768.21(8) premised on the existence of such a crisis. We disagree, at least insofar as <u>Mizrahi</u> remains legally binding precedent. First, <u>McCall</u> expressly stated that its holding was "not inconsistent" with <u>Mizrahi</u> because the statutes at issue

in the two cases were materially different, in that the damage caps at issue in McCall (and later Kalitan) raised different equal protection concerns than did the class limitation at issue in Mizrahi. 134 So. 3d at 903–04. McCall's and Kalitan's discussions of the medical malpractice crisis therefore did not directly abrogate Mizrahi on the issue of whether section 768.21(8) violates equal protection.

Moreover, we are bound to follow Mizrahi even if the supreme court's subsequent decisions in related cases suggest that it might decide the case differently if it were to address the issue today. When a district court believes that a supreme court case has been incorrectly decided or should be reevaluated, the court cannot simply deviate from the supreme court's decision. Rather, the proper procedure is to follow the precedential case and certify a question of great public importance that presents the district court's concerns. See Strickland v. State, 437 So. 2d 150, 152 (Fla. 1983); Hoffman v. Jones, 280 So. 2d 431, 434 (Fla. 1973) (noting that district courts are free to certify questions and advocate a change in the law when they deem it appropriate but that they are "bound to follow the case law set forth by this Court"). We follow that path here.

Mizrahi expressly decided the constitutional question that Santiago and Caceres raise in this case, and it continues to be binding precedent. Pursuant to that decision, we declare that section 768.21(8) is valid as against the equal protection claims asserted here. Accordingly, we affirm the dismissal at issue.

However, we are mindful of McCall's observations that "a crisis is not a permanent condition" and that "[c]onditions can change, which remove or negate the justification for a law, transforming what may have once been reasonable into arbitrary

and irrational legislation." 134 So. 3d at 913. <u>McCall</u> and <u>Kalitan</u> suggest that such is the case with respect to the medical malpractice crisis that, according to <u>Mizrahi</u>, formed the constitutional underpinning of section 768.21(8). For this reason, we certify the following question of great public importance:

> IN LIGHT OF THE SUPREME COURT'S DECISIONS IN <u>ESTATE OF McCALL v. UNITED STATES</u>, 134 SO. 3D 894 (FLA. 2014), AND <u>NORTH BROWARD HOSPITAL DISTRICT v. KALITAN</u>, 219 SO. 3D 49 (FLA. 2017), DOES SECTION 768.21(8), FLORIDA STATUTES, VIOLATE THE EQUAL PROTECTION GUARANTEES OF THE UNITED STATES AND FLORIDA CONSTITUTIONS, NOTWITHSTANDING THE COURT'S PRIOR DECISION ON THE ISSUE IN <u>MIZRAHI v. NORTH MIAMI MEDICAL CENTER, LTD.</u>, 761 SO. 2D 1040 (FLA. 2000)?

> Affirmed; question certified.

BLACK and LUCAS, JJ., Concur.